## Gish v. Shaver, Sheriff.

(Decided November 17, 1910.)

### Appeal from Muhlenberg Circuit Court.

1. Taxation—Contract for Sale of Coal Lands—Liability to Taxation. —Where one by a written contract agreed to pay $90,000.00 for 1,900 acres of land, including a railroad track, coal lands, cars, houses, store, goods, and all the equipment belonging or appertaining to said mine, though the owner's title to the land was de-

.fective, and while it cost him $5,000.00 to perfect his title, the contract was clearly subject to taxation as personal property.

2. Same—Conflicting Statutes—Amendment—Appeals.—The provisions of sections 4241 and 4260, Ky. St., as they now appear in the Statute, as to appeals, are manifestly inconsistent. The rule applicable where there are inconsistent provisions in a Statute, is thus stated in 26 Am. & Eng. Ency. of Law, page 619: "Where there is an irreconcilable conflict between different parts of the same act, the last in the order of position must control," this rule must prevail where an amendment is made to an old Statute. The Legislature in making the amendment evidently had its attention directed especially to appeals in this class of cases, and intended to put them upon the same plane as other civil cases and to give the circuit court jurisdiction to hear the whole matter anew as in other civil cases appealed from the county court.

S. R. CREWDSON, BELCHER & SPARKS and S. Y. TRIMBLE for appellant.

YORK & LAFFOON for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

J. A. Shaver, the sheriff of Muhlenberg county, instituted this proceeding under the statute against Shelby J. Gish to list as omitted property as of date September 1, 1905 and 1906, a certain contract held by Gish. The county court held that the contract was personal property subject to assessment and fixed its value at $122,958 for each of the years. Gish took an appeal to the circuit court; the circuit court held that the property was subject to assessment and fixed its value at $90,000 for each of the years referred to. From this judgment Gish appeals, and the plaintiff prosecutes a cross appeal.

The facts of the case are these: Gish owned a coal mine in Muhlenberg county which he was operating and at which he had built a railroad track and had constructed a tipple, and other things necessary for its operation. He owned or controlled a large body of land about the coal mine; there were about 1,900 acres in all to which he had title or thought he could get title. On October 11, 1904, he sold the coal mine, land and personal property connected with the mine to L. T. Dickason, and the following writing was executed evidencing the sale:

"This contract made and entered into this 11th day of October, 1904, by and between Shelby J. Gish, of Muhlenberg county, Kentucky, and L. T. Dickason, of Chicago, Illinois, witnesseth: That said Shelby J. Gish,

for and in consideration of the sum of one hundred and fifty thousand dollars, to be paid as hereinafter set out, agrees to and does hereby sell to said Dickason nineteen hundred acres of coal land situated in Muhlenberg county, Kentucky, near Mercer Station, known as the Gish coal mines, about one-half of said land being only the mineral right and the balance both surface and mineral. The conveyance of mineral right only and of fee simple title to be as shown by the deeds of said Gish or of S. C. Gish to said land. This conveyance is to include the said Gish coal mines and plant together with all the machinery, tracks, cars, houses, store, goods and all the equipment of every character belonging or appertaining to said mines. Should said Gish not be able to secure title to 325 acres of said land, then said Dickason shall deduct from the purchase price, ten dollars per acre for said 325 acres of land. Said Dickason agrees to pay twenty-five thousand cash on said land when deed thereto is made and the balance one hundred and twenty-five thousand dollars is to be paid at the rate of twenty-five thousand dollars per year with six per cent interest until paid and notes are to be executed and delivered for said sum, and said Dickason is to have the privilege to pay off any or all of said notes at any time before they come due. Should said Dickason fail to pay any of said notes within one month after same becomes due, then all of said notes at once become due and payable and said Gish may at once maintain an action to close this lien on said property for said sum. Said Gish shall give said Dickason possession of said property by November 1, 1904, and sooner than that date if possible.

"Should the title of any of said land not be good, and said Gish cannot get hereafter a good title to same, then ten dollars per acre is to be deducted for the mineral right and twenty dollars per acre for those tracts containing both surface and mineral right of which said Gish fails to make good title. L. T. Dickason agrees to give said Gish the right of way for a railroad track across said land from the I. C. railroad to other lands which said Gish may obtain. Said Gish is to retain a lien on said property for the purchase price thereof. Said Gish is, as soon as he conveniently can, to furnish an abstract of title to said land to said Dickason.

"Said Dickason agrees to fill all said Gish's contracts for coal at the prices agreed on by said Gish, unless hereafter released.

"S. J. GISH,

"L. T. DICKASON, per R. Morgan,
            agent for L. T. Dickason."

Gish received from Dickason after the contract was made the sum of $25,000 on the purchase money, and gave possession of the property to the vendee on November 1, 1904. Gish failed to get title to a part of the land as he expected, but tendered the vendee a deed for the remainder as provided in the contract. The vendee refused to accept the deed because of alleged defects in the title and thereupon the vendee and his assignee brought a suit against Gish to rescind the contract of sale and to recover what it had paid, and also the money it had expended on the property in betterments, the whole claim sought to be recovered on the rescission of the contract being about $60,000. Gish filed an answer in which he denied the allegations of the petition and sought the specific execution of the contract. A little later he filed a suit alleging that the vendee was wasting the property and asking that it be put into the hands of a receiver. The cases were pending on the docket of the Muhlenberg circuit court on September 1, 1905, and September 1, 1906, but at the October term 1906, an agreed judgment was entered by which the vendee paid and agreed to pay Gish $122,958, and accepted the deed which Gish had tendered, he having in the meantime obtained deeds of release from various parties perfecting his title to the land. Gish placed no value upon the contract on September 1, 1905 or on September 1, 1906, because the matter was in litigation. The purchaser was a non-resident of the State, and had no property in the State; and the assignee of the purchaser was a foreign corporation. Gish did not give in the contract for assessment as it was in litigation, and he did not know what it was worth. The land was given in for taxation each year and the purchaser paid the taxes on the property.

It is earnestly maintained that as the deed had not been accepted and no notes had been executed, the contract was conditional and was not subject to assessment. But it was clearly personal property. The statute requires that all personal property shall be listed for taxation. It is true that Gish's title to the land was defective, but this defect he perfected; and while it cost him $5,000

to perfect his title, this fact merely goes to the value of the contract. It does not show that it was not personal property subject to assessment. The case is not to be distinguished from the ordinary sale of real estate by title bond. The contract bound the purchaser to pay the purchase money, and it was incumbent on Gish, if his title was not good, to perfect his title, and tender the purchaser a good deed. We, therefore, conclude that the county court and the circuit court each properly held that the property was subject to assessment.

It is insisted on the cross appeal that the circuit court was without power to change the valuation of the property made by the county court; and for the appellant it is insisted that the circuit court fixed the valuation of the property too high.

Section 4241, Ky. Statutes, provides that from so much of the order of the county court deciding whether or not the property is liable to assessment, either party may appeal as in other civil cases. This provision was brought over from the old act; and under it as has been several times held, the circuit court on appeal has jurisdiction only to determine whether or not the property is liable to assessment. But in the last revision of the statute by the act of March 15, 1906, what had been section 4241, is also inserted a second time in what is now section 4260, and there the old statute is amended as to appeals so as to read as follows:

"The judgment of the court shall have the same force and effect as the judgment of the court in civil cases. Either party may appeal from a decision of the county court to the circuit court, and then to the Court of Appeals, as in other civil cases." * * *

The provision of section 4241 and 4260 as they now appear in the act as to appeals are manifestly inconsistent. The rule applicable where there are inconsistent provisions in a statute is thus stated in 26 Am. & Eng. Encyc. of Law, page 619:

"Where there is an irreconcilable conflict between different parts of the same act, the last in order of position must control, or the clause which is directed specially to the matter in preference to others mentioning it incidentally only."

Manifestly this rule must prevail where an amendment is made to an old statute; for the only purpose the Legislature could have had in making the amendment was to change the law as it then was. The revenue and

taxation act is long and embraces many subjects. The reasonable explanation of the conflict is that when the Legislature inserted the provision of the old law in section 4260, and amended it as it now appears, it was overlooked that the same provision of the old law had already been inserted at another point in the act. The Legislature in making the amendment evidently had its attention directed especially to appeals in this class of cases, and intended to put them upon the same plane as other civil cases, and to give the circuit court jurisdiction to hear the whole matter anew, as in other civil cases appealed from the county court.

It is evident from the facts that Gish realized from the contract about $117,000 clear of all expenses. The fact that the matter was in litigation on September 1, 1905 and 1906, would subtract something from its value, but we give considerable weight to the finding of the circuit court on a question of fact like this and under all the circumstances we are unwilling to disturb his judgment on the question of value.

The judgment is, therefore, affirmed on the original and on the cross appeal.