## Tackett v. Eastern Coal Corporation et al.

Oct. 12, 1943.

G. R. Blackburn and Joe P. Tackett for appellant.

Clyde R. Levi for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Oliver Tackett was accidentally injured on July 3, 1937, while employed by the Eastern Coal Corporation as a mine motorman. The employer paid him compensation at the rate of $15 a week for 36 3/7 weeks for temporary total disability, suspending the payments on March 15, 1938, when he returned to work. He did light work, such as picking bone, and was paid $4 a day until April 2, 1938. He did not work from April 2 until April 30, but resumed work on April 30, 1938, and continued to work until October 28, 1938, at $4 a day, when he ceased working, claiming that he was totally disabled and unable to perform any kind of labor. He filed a claim for compensation with the Workmen's Compensation Board, and on November 9, 1939, the referee found that as a result of his injury he suffered a permanent partial disability of 20 per cent., and awarded him compensation at the rate of $3 a week. The claimant filed a motion for a full board review and also a motion for an oral argument which was sustained. After the oral argument the board entered an order on February 20, 1940, directing that the claimant be examined by Dr. Franklin Jelsma of Louisville, Kentucky, for the purpose of ascertaining whether he had suffered any nerve injury as a result of the accident. The order provided that either party might take the deposition of Dr. Jelsma after his report had been filed. Dr. Jelsma examined the claimant on February 23, 1940, and his report was filed with the board on February 29, 1940. After setting out in detail his findings, Dr. Jelsma concluded his report as follows:

"The findings above indicate that the 3rd, 4th, 5th, 6th and 7th cervical nerves on the right side are disturbed, especially the 5th, 6th and 7th. This disturbance causes an irritation which has resulted in a soreness over the places that these nerves are distributed to, also in a tremor of the pectoral muscles particularly, and to a less degree the other muscles supplied by these nerves.

"The above covers the involvement of the nervous system as requested by the Board and I would say that as a result of this particular involvement, he has a 15% permanent disability at the present time. It should also

be mentioned that this man's condition can be improved from a neurologic standpoint by freeing the above nerves mentioned. I think that his permanent disability could be reduced in this manner, and that the soreness could be largely relieved and that the motion and usage of the right upper extremity could be restored to normal, so the present involvement of the nervous system, which is involvement of the peripheral nerves, that is the cervical nerve outside the cord could be relieved by surgery to a large extent.''

On May 21, 1940, the board made an award in conformity with the opinion of the referee. Claimant filed a petition for review in the Pike circuit court, but on August 13, 1940, moved the court to remand the case to the Workmen's Compensation Board for its further consideration. The board also requested that the case be remanded for the purpose of allowing it to hear further evidence. The case was remanded to the board, and the deposition of Dr. Franklin Jelsma was taken. It appears that a dispute had arisen as to the correct interpretation of his report in the light of a letter written by him to the claimant's attorney subsequent to the date of the report. After considering the new evidence the board, on October 21, 1940, declined to change its award of May 21, 1940. The board concluded its opinion as follows: ''In the light of all the circumstances, we do not believe that the plaintiff is totally and permanently disabled, but that he is permanently and partially disabled. We have done our best to afford the plaintiff a fair trial in this matter, to consider all the evidence that he offers, and even to grant him an opportunity to introduce evidence which, perhaps should have been brought into the case originally. We believe that the referee's opinion is correct in its conclusion and that our former opinion upon Full Board Review, on May 21, 1940, affirming the opinion of the referee was substantially correct in its conclusions.''

The claimant again filed a petition for review in the Pike circuit court, and on December 21, 1940, a judgment was entered affirming the finding of fact by the board of 20 per cent. permanent partial disability to the body as a whole. The judgment corrected an error in the award of the board by increasing the period of temporary total disability from 11 2/7 to 36 3/7 weeks; that is, from the date of the accident, July 3, 1937, to the date the claim-

ant returned to work, March 15, 1938. On January 21, 1941, the board entered an order conforming to the judgment of the Pike circuit court and correcting the error in its award by increasing the period of temporary total disability from 11 2/7 weeks to 36 3/7 weeks. The employer makes no complaint of this change in the award. The claimant has appealed on the ground that the evidence shows conclusively that his injury resulted in permanent total disability, and that there is no evidence warranting a finding of partial disability. In proceedings under the Workmen's Compensation Act, KRS 342.001 et seq., the board must determine the weight and sufficiency of the evidence and the justifiable inferences to be drawn therefrom. If there is competent evidence which is substantial, that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in support of the board's award, then the judgment approving the award must be affirmed. American Rolling Mill Company v. Pack, 278 Ky. 175, 128 S. W. (2d) 187, 190; Atlas Coal Company v. Nick, 289 Ky. 501, 159 S. W. (2d) 48.

The claimant testified that on July 3, 1937, while he was seated on the deck of a motor, a piece of slate fell from the roof of the mine and struck him on the head. He was not rendered unconscious. He was taken to a hospital where he remained 37 days. A cast was put around his head, neck and shoulders which he wore about 6 weeks. There were no cuts about his head or body, but his neck and shoulders were injured and, at the time he testified, he was still unable to move his head without pain. He returned to work on March 15, 1938, and except for the period from April 2 to April 30, 1938, worked regularly until October 28, 1938. He worked at the tipple picking bone. He found that he was unable to work without suffering pain, and had not performed work of any kind after October 28, 1938. Twelve physicians testified, five for appellant, six for the appellee, and one who was appointed by the board to examine appellant and report his findings. Dr. A. R. McKenzie, a radiologist, made X-ray pictures of appellant's neck and spine. He was asked what evidence of any fracture or bone injury he found, and he answered:

"I found that there was a bridging of new bone formation between the sixth and seventh cervical vertebrae seen in the lateral view. There is also found in the

A P view on the right side a slight increase in new bone formation. The bodies of both vertebrae, the sixth and the seventh, are now completely filled out, but in my opinion there has been a fracture of both of these vertebrae and a damage to the disc between with the formation of new bone from an old traumatic injury. There is evidently new bone impinging on the nerve roots on the right side producing the symptoms he complains of.

"Q. Is this the X-ray picture, the lateral view you refer to showing a bridging of the vertebrae? A. Yes sir. (Points to X-ray) this is the sixth and seventh cervical with this new bone formation here at the back and also a bridge in front, but both of these vertebrae seem now at the present time to be filled out almost completely, that is, normally, and compare very favorably with some of the vertebrae above and below. I consider that almost a normal formation as far as the body of the vertebrae is concerned from this traumatic injury that he has had."

In a written report made to appellant's attorneys, he estimated appellant's disability at 100 per cent., but in his deposition he said that he was unable to fix the percentage of disability, and further said: "I stated two or three times there, I think, that I just couldn't give a definite opinion as to disability based upon radiological evidence alone, but as a mere suggestion to you, to give this man the benefit of the doubt I thought that he should be checked by a good careful neurological surgeon who would fix the percentage of disability."

Dr. H. D. Hatfield examined appellant on January 3, 1939. The X-ray pictures showed an old fracture of his vertebrae at the extreme end of the sixth dorsal process. Dr. Hatfield was of the opinion that appellant was totally disabled, but he conceded that the condition found by him would improve with proper treatment. The fracture had healed completely, and appellant at the time of the hearing was suffering from a traumatic neuritis which followed his injury. In the opinion of the witness the neuritic condition could be cleared up and the disability would be greatly reduced. Dr. W. J. Smith, Dr. J. D. Lee, and Dr. S. M. E. Simon testified that appellant was unable to perform any manual labor. Dr. J. R. Cooper, a radiologist made an X-ray examination of appellant on April 4, 1938, and again on November 11, 1938. In his deposition he stated that his reports

made after these examinations were correct. In his report after the first examination, he said: "There is no visible evidence of fracture or dislocation. There is however, a definite osteophyte bridging over between the bodies of the sixth and seventh vertebrae. It is impossible to say what has caused this condition. It may be congenital in origin or could be the result of injury. There is nothing, however, about this condition that should cause any disability." After the second examination he reported his findings as follows: "An Osseous formation extending from the sixth to the seventh cervical vertebrae at the anterior portion of the bodies. This produces an ankylosis at this point. There are no compressions or deformities of these bodies otherwise. There is no visible evidence of fracture. The remainder of the cervical vertebrae and the upper dorsal vertebrae appear normal in every respect. It is impossible to say just what has caused this bony formation between the bodies of the sixth and seventh cervical vertebrae. It may be the result of an ossified ligament. I see nothing about this, however, that should cause this man any disability."

Dr. W. L. Gambill found that the fracture of the vertebrae had healed perfectly. There was some limitation of motion in the neck which would be permanent, and he fixed the degree of disability at 20 per cent. Dr. Francis A. Scott, an orthopedic surgeon, made physical and X-ray examinations of appellant, and estimated his permanent disability at 20 per cent. to the body as a whole. Dr. G. B. Irvine made physical and X-ray examinations of appellant, and stated that in his opinion appellant had 25 per cent. disability to the body as a whole. Dr. J. E. Johnson testified that in his opinion appellant was able to work and was only 20 per cent. disabled. Dr. Altamont Bracy and Dr. H. G. Camper fixed the disability at 15 per cent. Dr. Franklin Jelsma, who was appointed by the board to examine appellant, also fixed the disability at 15 per cent. He stated further that appellant's condition could be improved by a minor surgical procedure.

The medical testimony as to the percentage of disability was conflicting. Appellant insists that the condition described by the physicians showed total disability, and that the estimates of the medical witnesses who fixed the percentage of disability at less than 100

per cent. should be disregarded. The percentage of disability cannot be fixed with mathematical accuracy, but opinions of medical experts based on examinations made by them are competent. The witnesses who testified that appellant was not totally disabled from performing manual labor stated facts on which they based their opinions. As said in Inland Steel Company v. Newsome, 281 Ky. 681, 136 S. W. (2d) 1077, 1079: "It must be borne in mind that neither this Court nor the Circuit Court was authorized to determine the weight of the testimony. So far as questions of fact are concerned, the sole function of the Courts in workmen's compensation cases is to ascertain whether the record discloses any competent evidence of probative value which supports the fact findings of the Board."

The record in this case discloses the board gave the evidence thorough consideration and rendered its decision only after mature deliberation. It is our opinion that the evidence is sufficient to sustain the finding of the board, and it follows that the judgment must be and it is affirmed.