## Maynard v. Pond Creek Collieries Co. et al.

Jan. 16, 1945.

158

Abner May for appellant.

Howard & Mayo for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On September 6, 1940, Clyde Maynard was injured by a fall of slate while employed as a coal loader by the Pond Creek Collieries Company. He was taken to a hospital in Williamson, West Virginia, and placed in a plaster cast which was removed October 25, 1940. His employer paid him compensation for temporary total disability at the rate of $15 a week for 20 weeks, and, a dispute having arisen concerning the amount and duration of the compensation payable, Maynard filed with the Workmen's Compensation Board an application for adjustment of his claim. In his application he described his injuries as "back injured, several vertebrae fractured, muscles lacerated and left leg affected," and he stated that he had suffered total permanent disability. On October 7, 1941, a referee of the board who heard the evidence found that Maynard, as a result of the injury, was totally disabled from September 6, 1940, until February 15, 1941, and had a 33 1-3 per cent. disability thereafter until March 31, 1941. He awarded Maynard compensation on account of temporary total disability at the rate of $15 a week from September 6, 1940, until February 15, 1941, a period of 20 weeks, and further compensation on account of temporary partial disability at the rate of $4 a week beginning February 16, 1941, and ending March 31, 1941. The claimant moved for a full board review, and on December 2, 1941, the full board approved the award of the referee. The claimant then filed his petition for review in the Pike circuit court, and on June 26, 1942, the award of the board was affirmed.

On this appeal it is argued that there is no evidence to sustain the findings of the board, and that the evidence introduced by appellant shows conclusively that he suffered permanent partial disability of 30 per cent. to 50 per cent. to the body as a whole. We have held consistently that in the absence of fraud or mistake a finding of fact by the Workmen's Compensation Board is conclusive where it is supported by competent evidence of probative value. Frazier v. Kentucky-Jellico Coal Company, 296 Ky. 777, 178 S. W. 2d 601; Mills v. Casner, 296 Ky. 678, 178 S. W. 2d 196; Bennett v. White Coal Company, 295 Ky. 527, 174 S. W. 2d 749; Tackett v. Eastern Coal Corporation, 295 Ky. 422, 174 S. W. 2d 707;

Kabai v. Majestic Collieries Company, 293 Ky. 783, 170 S. W. 2d 357. As said in Utley v. Pence, 295 Ky. 673, 175 S. W. 2d 372, 375: "It is the recognized rule that if there is any evidence of a substantive or probative nature tending to support the findings of the Workmen's Compensation Board the courts have no authority to substitute their own finding of fact for that of the board."

The issue presented to the board was whether appellant had suffered a permanent partial disability or a temporary partial disability, and if the latter its extent and duration. The determination of the question turned on the proper evaluation of the medical testimony. Appellant introduced three witnesses, Dr. W. J. Smith, Dr. J. C. Gaskell, and Dr. L. F. Boland, and two physicians, Dr. W. W. Scott of Williamson, West Virginia, and Dr. Francis A. Scott of Huntington, West Virginia, were introduced by the employer. Dr. W. J. Smith testified that he made a superficial examination of appellant on April 8, 1941, and from the physical examination and the study of X-ray pictures presented to him formed the opinion that appellant had suffered "50 per cent. total disability." In the course of his testimony he said: "Well, from the pictures I would judge that he had a fracture, an impaction of the vertebra, which showed very plain in these pictures, and he has some loss of flexibility of the spine and also some lateral curvature of the spine."

Dr. Gaskell examined appellant on April 15, 1941. Basing his opinion on X-ray pictures presented to him, he stated that appellant had suffered "multiple fractures of the transverse lumbar processes," and his disability at the time of the examination was 30 to 35 per cent. to the body as a whole. When asked whether or not that disability would disappear, he answered: "I am unable to say; the only thing I can give an opinion on is his present condition." Dr. L. F. Boland examined claimant in March, 1941, and, from his examination and the study of X-ray pictures made at the time, he was of the opinion that claimant then had a 33 1/3 per cent. disability. He found evidence of fractures of the transverse processes of the third, fourth, and fifth lumbar vertebrae, but there was no evidence of a fracture of the body of any of the vertebrae. He was of the opinion that claimant's condition would improve, and was unable to

say whether or not his disability was permanent. The opinions of all of these physicians as to the extent of the disability were based partly on the claimant's subjective symptoms. Dr. W. W. Scott treated the claimant while he was in the hospital at Williamson, West Virginia, and examined him again in January, 1941. An X-ray examination disclosed a fracture of the transverse process on the left side of the third lumbar vertebra and a lipping of the vertebrae resulting from arthritis of long standing. He was of the opinion that there was no permanent injury, and that appellant had fully recovered from any injury resulting from the accident. Dr. Francis A. Scott, an orthopedic surgeon of Huntington, West Virginia, made a thorough examination of appellant on April 23, 1941, and found that he had no disability at that time on account of the injury. He found evidence of arthritis which had been present for a long period of time and did not result from the injury. He stated that if appellant had suffered fractures of any of the transverse processes they had healed completely and could not be detected in the X-ray pictures. There was a definite conflict in the medical testimony, but two of the witnesses stated positively that appellant had made a complete recovery and was suffering no disability as a result of the injuries received in the accident.

Appellant relies upon Broughton's Adm'r v. Congleton Lumber Company, 235 Ky. 534, 31 S. W. 2d 903, in support of his contention that the testimony of the two physicians introduced by the appellee was insufficient to sustain the award, but the facts in that case and in the present case are entirely different. In the Broughton case the only evidence that the employee's death was not due to an injury received in an accident is found in the testimony of a physician who stated that in his opinion the employee's death was due to a pre-existing disease, but his opinion was but a deduction from a diseased condition he found and was based on a hypothetical question which omitted any reference to the injury. Here the witnesses for appellee based their opinions on facts disclosed by their examinations and the board's finding was not rested upon a pyramiding of inferences as in the Broughton case.

The rule announced in the cases heretofore cited applies, and the judgment is affirmed.