TRANSPORT MOTOR EXPRESS, INC.,
Michigan Mutual Insurance Company
and/or Michigan Mutual Liability Company, Movants,

v.

William F. FINN, James R. Yocom, Commissioner of Labor and Custodian of the
Special Fund, Workmen's Compensation
Board, Respondents.

Supreme Court of Kentucky.

Sept. 19, 1978.

Larry L. Johnson, William P. Swain, Thomas H. Watson, Boehl, Stopher, Graves & Deindoerfer, Louisville, for movants.

Buel L. Cox, Robb L. Smith, Kenneth E. Hollis, Frankfort, Gemme M. Harding, Cyril E. Shadowen, Dept. of Labor, Louisville, Robert F. Stephens, Atty. Gen., Frankfort, for respondents.

REED, Justice.

In this workmen's compensation case, the Court of Appeals elected to set forth a comprehensive, all-inclusive formula for computing the amount due a disabled worker in all compensable situations. The opinion is reported *sub nom. Transport Motor Exp., Inc. v. Finn*, Ky.App., 568 S.W.2d 509 (1977). Because of the broad sweep of the decisions announced affecting not only the case considered but other cases with different facts and subject to different statutes, we granted discretionary review. The facts of the case decided are simple and undisputed. The applicable law is complex and contradictory. The majority opinion of the Court of Appeals makes a commendable effort to create order out of confusion, but we are unable to agree with its basic premises and thus with the result derived. Therefore, we reverse for the reasons later stated in this opinion.

In this case, the Workmen's Compensation Board found Finn, the employee, to be totally and permanently disabled. It apportioned responsibility for his resultant total disability; 25% due to the injury of October 1974 which gave rise to the filing of the claim; 25% due to the arousal of a dormant condition triggered by the later injury into disabling reality; 50% due to a prior active disability. Finn's average weekly wage at the time of the injury was $261.60. He had no dependants. The maximum weekly benefits payable as determined under KRS 342.740 was $84.00.

The employer and the Special Fund argue that the award was improperly computed. The Special Fund concentrated its fire during oral argument on the assertion that there had been a failure to give effect to the language of KRS 342.120(4) requiring the exclusion from any award of all compensation which would have been afforded on account of a prior disabling disease or condition. The employer directed his oral argument to the proposition that *Pennington v. Winburn*, Ky., 537 S.W.2d 167 (1976), should be re-examined as to its soundness, but that, in any event, *Pennington*, if reaffirmed, should not be extended to affect apportionment situations.

*Pennington, supra*, dealt with the method for computation of benefits in a permanent *partial* disability case. The decision was based upon a construction of KRS 342.-730(1)(b). Finn's case involves permanent *total* disability. The method for computing the benefits to be paid is spelled out in KRS 342.730(1)(a). *Pennington* has no application.

Further, in our view, *Pennington, supra*, has no direct application to apportionment under KRS 342.120. The apportionment function is separate and distinct from the function provided for in KRS 342.730. Some of the present confusion arises from our past failure to recognize and give effect to the severable functions involved.

KRS 342.730(1) states in pertinent part: "Income benefits for disability shall be paid to the employe as follows, . . ." The section continues in its two subsections to prescribe the methodology for computing the amount in dollars to be paid in both total and permanent partial disability cases. This section is specific and undertakes to cover the entire range of possible degrees of disability. This court has concluded that the section is "the basic vehicle" through which the total benefits due a disabled employee would be determined in any given case. The end result called for is an actual dollar figure which, absent involvement of other sections of the workmen's compensation statutes that have an effect on this figure, is to be paid to the employee. No other section with any relevance to this discussion has as its objective the computation of an actual dollar amount—that statement applies with particular force to KRS 342.120.

KRS 342.120 is an apportionment—second injury fund-type statute. It provides the methodology to be used, when the required facts are proven to exist, to equitably divide responsibility for the payment of compensation otherwise determined to be due an employee. Its purpose is to prevent the employer from being held responsible for more of a compensation award than is attributable to a disability incurred in the

course of an employee's employment with him—a result viewed as particularly unjust to employers and which encourages discrimination against disabled workers in hiring policies.

*Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971), delineates the correct procedure to be followed under KRS 342.120. The final result of this procedure is an apportionment of responsibility for payment of an award expressed in terms of percentages. The determination of these percentages exhausts the purpose of KRS 342.120. All that remains is the proper application of these percentages to produce the amounts of money chargeable to the affected parties, the employee, the employer, and the Special Fund.

The confusion and uncertainty already evident became greater after the decision in *Pennington, supra.* The proposition that KRS 342.730 and 342.120 served separate and distinct purposes became lost in the confusion. Their distinct formulas were melded together to compute the benefits due. The result achieved is a simultaneous determination of the proportionate amounts due and the total amount due. We hold that this is a distortion of the computation process and impermissibly nullifies the effect of the exclusion language of KRS 342.-120.

The percentage of disability figure referred to in subsection KRS 342.730(1)(b) in the computation: average weekly wage times the statutory percentage times the percent disability figure is the combined disability figure. This is true in every case whether or not apportionment is required. The disability figure is not included in the computation provided in KRS 342.730(1)(a) simply because it would always be 100% and to include such a constant element in statutory formula language would achieve nothing but redundancy.

■ In our view, the proper approach, whether the disability is total, as here, or partial is to employ the methodology of

KRS 342.730 to determine the amount to which the claimant is entitled by the whole of his disability. If apportionment is required by operation of KRS 342.120, the formulas provided therein are then applied to the total amount therefore determined to give effect, in terms of dollar amounts payable or nonpayable, to the apportionment between the interested parties, the employer, the employee, and the Special Fund. This procedure gives effect to the exclusion language of KRS 342.120(4). It also has the effect of maintaining responsibility for payment of dollar amounts in the same proportions among the various elements and with the same relationship to the total award as the proportionate responsibility for the total resultant disability was determined to be by the evidence.

■ Reasoning that the amount assignable to noncompensable disability is already excluded by the method of determination, the Court of Appeals in its opinion held that "exclude" does not mean "deducted from the compensation." We disagree with this conclusion. If the award in this case were not to be apportioned, Finn would have been entitled to an award of $84.00 per week for his 100% disability.[1] When 50% of a 100% disabled employee's disability is determined to be noncompensable, yet he receives an award of $71.97 per week (88.8% of the maximum he would receive if his entire disability were compensable), how can it be said that any real effect is given to the exclusion requirement?

KRS 342.120(4) refers to "excluding from compensation." "Compensation" is paid in dollars and does not refer to percentages divorced from dollar figures. If the statutory language is to have any real meaning in keeping with the context in which it is used, then an amount having the same proportionate relationship to the total amount due that the noncompensable disability bears to the total disability must be deducted from the award.

---

1. The computation would be: $261.60 ×
55% = $143.88. The result is greater than the maximum award permitted by KRS 342.740.

Therefore, the award would be reduced to the permitted maximum, which in this case is $84.00 per week.

■ An authoritative text points out that there are three principle forms of apportionment: between successive employers, between an employer and a second injury fund; and between an employer and the employee. In the first two forms, the employee is assured of full payment from someone; but in the third, the employee faces the possibility of bearing a substantial portion of the loss himself.[2] Our statute is a hybrid. It allows apportionment of the responsibility for the loss among all three parties. The intent is manifest that where a portion of the resultant disability is attributable to a prior "disabling" disease or condition or injury, the employee must bear responsibility. This court has no choice but to give effect to this exclusion.

■ The benefits in Finn's case should be computed as follows:

$261.60 × 55% = $143.88. The $143.88 being greater than the maximum under KRS 342.740, is reduced to the maximum permitted, or $84.00 per week.

The $84.00 per week is then apportioned in accordance with the determinations made under KRS 342.120: $84.00 × 25% = $21.00 weekly (liability of the employer); 50% is noncompensable and excluded from the award; $84.00 × 25% = $21.00 weekly (liability of the Special Fund).

Ordinarily we would now end the opinion. The case argued has been decided. The opinion of the Court of Appeals, however, stated: "Had the claimant herein cross appealed he would have been entitled to lost wages . . . ." The parties to this appeal discuss the issue in their briefs.

In *Apache Coal Co. v. Fuller,* Ky., 541 S.W.2d 933 (1976), this court stated:

". . . disability is defined and paid for on the loss of earning capacity theory with a provision for entitlement to compensation based on actual wage loss theory, whichever provides the higher benefits." ". . . It is apparent that what the legislature has done is adopt two theories for the computation of benefits . . ."[3] Id. at p. 934.

A second look at this construction convinces us that we must now reject part of that language and its implications. Our conclusion here does nothing to change the result in *Apache,* for that result did not rest upon part B of the formula set out in that case.

■ The loss wage theory of computing benefits springs from a construction of the language contained within KRS 342.620(9). That section provides:

" 'Disability' means, except for purposes of KRS 342.730(1)(c) relating to scheduled losses, a decrease of wage earning capacity due to injury or loss of ability to compete to obtain the kind of work the employe is customarily able to do, in the area where he lives, taking into consideration his age, occupation, education, effect upon employe's general health of continuing in the kind of work he is customarily able to do, and impairment or disfigurement. *A person who has lost wages by reason of his disability, and who is otherwise eligible for compensation, is entitled to compensation during the compensable period in an amount equal to the wages lost,* so long as this amount does not exceed the applicable maximum compensation. For purposes of determining wages lost under this section, it is assumed that wage earning capacity prior to injury is the average weekly wage as calculated under KRS 342.140. An individual entitled to benefits under permanent partial disability *shall be entitled to either his lost wages due to his injury,* or body functional disability benefits, whichever is greater."

---

2. Larson, Workmen's Compensation Law, Sec. 59.20, pp. 10–265, 266, Vol. 2 (1976).

3. The court went on to set out the formula derived from this interpretation: ". . . the employee is entitled to benefits computed by the most favorable of the following formulae: A. 55% of the average weekly earnings of the employee at the time of his injury and 2½% of his average weekly wage at the time of his injury for each dependent up to a maximum of three, multiplied by the percentage of occupational disability caused by the injury. B. His average weekly wage prior to the injury minus his average weekly wage subsequent to injury.

KRS 342.620(9) is a definition section. Its purpose is to define disability. The references to lost wages in that section must be construed in light of the purpose of the section in which they appear and in such manner so as to give the intended meaning to related sections, if possible. We have already shown that KRS 342.730 is the sole workmen's compensation statute section devoted specifically to the computation of income benefits. Income benefits are awarded on the basis of disability. KRS 342.730 is applicable across the entire range of possible disabilities. We conclude that it was intended to be employed in every disability case to determine benefits. A statutory construction which renders specific statutes meaningless in a given set of cases is to be avoided.

Under KRS 342.620(9), for purposes of determining lost wages, it is assumed that the wage-earning capacity prior to injury is the average weekly wage. To determine wages lost there is subtracted from the average weekly wage prior to injury, the amount of wages earned subsequent to injury. In total disability cases, the post-injury earnings would virtually always be zero. Consequently, in total disability cases, the wages lost would equal the average weekly wage. The employee would always be entitled to his average weekly wage, subject only to the maximum limits of KRS 342.740 under the wage-loss theory. If an employee is entitled to his average weekly wage subject only to the maximum permitted by KRS 342.740, then KRS 342.-730(1)(a) is left meaningless. 100% of average weekly earnings subjected to a maximum will always be greater than 55% (66⅔% since 1976) of the same earnings subjected to the same maximum.[4]

We have concluded that this court must give effect to the section, the specific purpose of which is the computation of benefits and within which there is a legislative declaration that benefits be paid based on a statutorily determined percentage of average weekly earnings.

■ KRS 342.620(9) supplies a single theory by which disability is determined. This is the "loss of earning capacity theory." Once the degree of disability is determined under this theory, it is inserted into the computation scheme of KRS 342.730 to arrive at the benefits due. Lost wages play an integral role in the determination of disability under this theory; but it cannot be construed as providing a separate and distinct method of computing benefits within the total context of the statute.

■ Wage earning capacity prior to injury is the average weekly wage. The most persuasive relevant evidence, though not the only evidence, of wage earning capacity subsequent to injury is the wage the claimant is actually able to earn. The difference between the two—wage loss—is presumptive evidence of the decrease in wage earning capacity or disability. The presumptive type evidence can be rebutted by other evidence of the sort indicated in KRS 342.-620(9).[5]

Construing "wages lost" as serving an evidentiary function within the earning capacity theory of determining disability, instead of presenting a distinct alternative theory for the computation of benefits, achieves a congruence between and gives effect to the two sections in terms of what we conceive to be their evident purpose and function which cannot be achieved by the other construction which we made and which the Court of Appeals followed as it was required to do having elected to consider the issue at all in this case.

There is a distinct contradiction presented. Although it is true KRS 342.620(9) states: "A person who has lost wages . . . is entitled to compensation . . . in an amount equal to the wages lost, . . . .", it is also true that to accept that language literally leaves impotent a later more specific section of the same Chapter, KRS 342.-730. We here take " . . . the last in

4. See concurring opinion of Judge Park, *Transport Motor Exp., Inc. v. Finn,* Ky.App., 568 S.W.2d 509, 513 (1977).

5. Cf. Larson, Workmen's Compensation Law, Vol. 2, Sec. 57.00, p. 10–1 (1976).

order of position . . . or the clause which is directed specially to the matter in preference to others mentioning it incidentally only." See *Gish v. Shaver*, 140 Ky. 647, 131. S.W. 515 (1910).[6]

The same reasoning holds true in the case of permanent partial disability. KRS 342.620(9) states in its last sentence: "An individual entitled to benefits under permanent partial disability shall be entitled to either his lost wages due to his injury, or body functional disability benefits, whichever is greater." In KRS 342.730(1)(b) there is a similar but conflicting phrase ". . . the individual entitled to benefits under permanent partial disability *shall be entitled to compensation based on lost wages* or body functional disability benefits, whichever is greater." We believe that by the latter phrase the legislature intended lost wages to serve the function that this decision will commit it to serve—an evidentiary factor to be used in the determination of disability. The former phrase is at odds with this interpretation. The rule of *Gish* is applicable. The procedure under KRS 342.730(1)(b) is identical to that under subsection (1)(a) with one exception. In permanent partial disability cases under subsection (1)(b) there is indeed an alternative method of determining benefits. The alternative is the benefits which could be awarded for body functional disability; "body functional disability benefits" refers to those benefits which are awarded under KRS 342.730(1)(c) for schedule losses—the price tag section. In permanent partial disability cases there are many occasions where a claimant suffers a scheduled loss responsible for his partial disability. Such a loss will often have an adverse effect on the claimant's ability to labor; if so, he is not limited to the schedule. KRS 342.730(1)(c)(27); *Blair v. General Electric Co.*, Ky., 565 S.W.2d 631 (1978). The adverse effect on an employee's ability to labor as determined under the decrease in wage earning capacity theory may or may not entitle him to benefits greater than those provided by the schedule; but, if this is the case, then the caveat in KRS 342.730(1)(b) insures that he will receive the greater award. KRS 342.730(1)(c)(27) and the caveat in KRS 342.730(1)(b) are complementary provisions. The procedure in permanent partial disability cases is to first determine the degree of disability as shown by the evidence presented, including wage loss. This figure is used in the computation scheme in subsection (1)(b) to arrive at the amount due the employee. If the scheduled loss table is applicable, the amount due under that section is determined. This figure is compared with the figure arrived at by use of the (1)(b) computation formula. The employee is entitled to the greater award of these two.

The decision of the Court of Appeals is reversed and the judgment of the Jefferson Circuit Court is reversed and the cause is remanded to the Jefferson Circuit Court with directions to remand this case to the Board for correction of the award in accordance with the views expressed in this opinion.

JONES and STERNBERG, JJ., concur.

LUKOWSKY, J., concurs in result and files separate opinion.

PALMORE, C. J., concurs in result and files separate opinion.

CLAYTON and STEPHENSON, JJ., dissent and concur in result only of the decision of the Court of Appeals.

PALMORE, Chief Justice, concurring.

I concur in the result of the majority opinion, but not in the process of reasoning by which it is reached. Whereas the majority opinion avoids the method of computation approved in *Pennington v. Winburn*, Ky., 537 S.W.2d 167, 168 (1976), by the charitable stratagem of holding that *Pennington* does not apply to apportionment cases, I would simply overrule it.

6. Cited in concurring opinion by Judge Park, *Transport Motor Exp., Inc. v. Finn*, 568 S.W.2d 509, 515 (1977).

Paragraph (3) of KRS 342.120, the apportionment statute, provides that the employer is liable for the degree of disability that would have resulted from the work-related injury alone, absent the previous disability or condition. In this case the degree of disability resulting from the injury of October 1974 is 25%. By anybody's definition a 25% disability is a "partial" disability. To find out what it means in terms of workmen's compensation necessarily requires the application of KRS 342.730(1)(b), the partial disability statute, and that of course involves *Pennington*, which I continue to think is so patently wrong that I could not bring myself to dissent from this opinion, which reaches the right result, on the strength of it.

I agree with the view expressed by Judge Vance's concurring opinion in the Court of Appeals that the action of that court, which we are now reversing, was forced by our own majority opinion in *Pennington*.

LUKOWSKY, Justice, concurring.

I concur in the result reached by my brothers in this case. However, I believe it necessary that I disassociate myself from the process of intellectual sophistry by which my colleagues write the following language out of the following statutes.

*KRS 342.620(9) (1972):* An individual entitled to benefits under permanent partial disability shall be entitled to either his lost wages due to his injury, or body functional disability benefits, whichever is greater.

*KRS 342.730(1)(b) (1972):* . . . provided, however, the individual entitled to benefits under permanent partial disability shall be entitled to compensation based on lost wages or body functional disability benefits, whichever is greater.

It would have been enough to dispose of the gratuitous comment of the Court of Appeals by pointing out that these statutes apply only to the computation of benefits for permanent partial disability. The statutes do not provide for dual theories of computing benefits in total disability cases. KRS 342.730(1)(a) (1972).

The vitality of the quoted statutory language and the interpretation we placed on it in *Apache Coal Co. v. Fuller*, Ky., 541 S.W.2d 933 (1976) can not be philosophized away. The mandate in *Apache, supra,* was issued on November 12, 1976. In December of 1976 the legislature saw fit to reenact KRS 342.730(1)(b). The only significant change made was the addition of the following to the previously quoted language, ". . . notwithstanding any section of KRS Chapter 342 to the contrary, there shall be no minimum weekly income benefit for permanent partial disability."

It is a fundamental principle of Kentucky law that when a statute has been construed by a court of last resort and the legislature subsequently has substantially reenacted the statute, it will be deemed to have adopted the construction theretofore placed upon the statute by the court unless the contrary is clearly shown by the language of the new enactment. *Brown v. City of Harrodsburg*, Ky., 252 S.W.2d 44 (1952); *Falender v. Hankins*, 296 Ky. 396, 177 S.W.2d 382 (1944); *Coleman v. Inland Gas Corporation*, 231 Ky. 637, 21 S.W.2d 1030 (1929).

The change effected by the 1976 amendment was the elimination of the minimum weekly income benefits in permanent partial disability cases. Certainly, the change expressed no legislative disavowal of the dual theories of computing benefits in permanent partial disability cases. Consequently, the reenactment reenforces the dual theories of computation set forth in the statute and applied in *Apache, supra.*

*Apache, supra,* may have been an invitation to a legislative dinner party[1] held in December, 1976, but it in no way determined the courses to be eaten by those attending. That the diners chose to consume the entré of minimum weekly income benefit and decline the dessert of dual theories of compensation was a matter of legitimate legislative choice. The people of this Commonwealth, acting through their duly elected legislators, have the right to select

1. Kentucky Law Survey—Workmen's Compensation, 66 Ky.L.J. 509 (1978).

an illogical, expensive or even foolish menu of workmen's compensation. This court is not a maitre d'hotel with power to change the menu on other than constitutional grounds.

In the last analysis the palate of the people determines the legislative diet. As President Ulysses S. Grant put it in his Inaugural Address on March 4, 1869, "I know no method to secure the repeal of bad or obnoxious laws so effective as their stringent execution." The continued application of the dual theories of compensation caused the legislature to eat the rejected dessert at their session in 1978 when they amended KRS 342.620(9) and KRS 342.730(1)(b) by striking the quoted language.

The constitutional ring is closed. The legislature gave. The legislature has taken away. This court should respect the function of the legislature. As the Supreme Court of the United States wrote in *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 194–195, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117, 146–47 (1978):

"Here we are urged to view the . . . Act 'reasonably,' and hence shape a remedy 'that accords with some modicum of commonsense and the public weal.' (citation omitted) But is that our function? . . . Congress has spoken . . . . Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto. . . . We agree with the Court of Appeals that in our constitutional system the commitment to the separation of powers is too fundamental for us to pre-empt (sic) congressional action by judicially decreeing what accords with 'commonsense and the public weal.' Our Constitution vests such responsibilities in the political Branches."

We should not attempt to erase vested substantive rights by retroactively applying these amendments under the guise of statutory interpretation. *Cantrell v. Stambaugh,* Ky., 420 S.W.2d 677 (1967).