PUREX CORPORATION/FERRY–
MORSE SEED COMPANY,
Appellants,

v.

David F. BRYANT, James R. Yocom, Commissioner of Labor and Custodian of the Special Fund, and Workmen's Compensation Board, Appellees.

James R. YOCOM, Commissioner of Labor and Custodian of the Special Fund, Appellant,

v.

David F. BRYANT, Purex Corporation/Ferry-Morse Seed Company, and the Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

March 23, 1979.

Rehearing Denied Nov. 30, 1979.

Earle T. Shoup, Paducah, for Purex Corp./Ferry-Morse Seed Co.

Hal Warren, Warren, Warren & Paitsel, Fulton, for David F. Bryant.

Cyril E. Shadowen, Asst. Counsel, Dept. of Labor, Louisville, Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, for James R. Yocom, Commissioner of Labor and Custodian of the Special Fund.

Before LESTER, WHITE and WILHOIT, JJ.

WILHOIT, Judge.

This case is an appeal from a judgment of the Fulton Circuit Court upholding the Workmen's Compensation Board award of benefits to the claimant-appellee, David F. Bryant. The board found that Bryant had been injured in a work-related accident which had resulted in a permanent injury of appreciable proportions and impairment of his future earning capacity. The board found that Bryant suffered 50 percent occupational disability from the combination of his work-related injury and the arousal of a dormant, nondisabling arthritic condition.

On January 18, 1975, David Bryant was employed by Purex Corporation at Ferry-Morse Seed Company in Fulton, Kentucky. He sustained an injury on the day in question while working in the company warehouse. He is 62 years old and has worked with the company since 1959. He generally worked in that portion of the plant where seed racks are washed and painted, but at the time of his injury he was in the warehouse assisting in loading boxes of seed racks into a railroad box car. In January 1975, Bryant's average weekly wage was $158.00.

After the loading operation had been completed, Bryant and a fellow employee proceeded to install "keepers" across the doorway of the boxcar to prevent the boxes from falling out when the doors were reopened after shipment. Bryant was standing atop a material pallet to perform this operation. In reaching for one of the "keepers," he lost his balance and fell some 12 to 15 feet to the asphalt sustaining the injuries which are the cause of this action.

After reviewing testimony from Bryant, his wife, and four doctors who examined him, the board found that he suffered a 50 percent occupational disability from the fall. The board awarded Bryant a total of $79.00 per week in overall disability benefits and apportioned the liability for benefits between Purex and the Special Fund with Purex being liable for one-quarter (¼) of the weekly benefits and the Special Fund being liable for the remaining three-quarters (¾) of the benefits.

Both Purex and the Special Fund appealed the award to the Fulton Circuit Court which affirmed the decision of the board.

Three questions are presented for review. First, did the board properly find that Bryant's wife was a dependent within the purview of KRS 342.730 (1972)?[1] Second, did the board have sufficient evidence in the record to support its determination that Bryant suffered a 50 percent occupational disability? Third, did the board err in using

1. On January 18, 1975 when Bryant was injured, disability benefits were calculated using a base figure of 55 percent of the employee's average weekly wage. The applicable percentage figure was increased by an additional two and one-half percent of average weekly wage for each of the claimant's dependents up to a maximum of three. See KRS 342.730(1)(b) (1972) (amended to a constant 66⅔ percent of average weekly wage, Kentucky Acts 1976 (Ex. Sess.), ch. 26, § 1, effective January 1, 1977). Thus, if the board's determination of his wife's status as a dependent were correct, Bryant's benefits would be calculated using a base figure of 57½ percent of his average weekly wage.

Bryant's "lost wages" as a factor in calculating the benefits to which he was entitled?

## I.

The first issue is whether the board erred in its finding that Bryant's wife was a dependent within the purview of KRS 342.-730 (1972). That statute, prior to its amendment in 1976, allowed a higher percentage of a claimant's average weekly salary to be used in calculating benefits where the claimant had one or more dependents up to a maximum of three.

Bryant's wife owns and operates a beauty shop near their home. She works full time and testified that she receives an annual income of slightly over $3,000.00 from this business.

■ While there are no Kentucky cases which specifically define the proper criteria for the determination of dependency under KRS 342.730(1)(b) (1972), there are a number of cases which deal with the determination of dependency in the context of entitlement to death benefits under the law. *See, e. g., Kenmont Coal Co. v. Clark,* 294 Ky. 226, 171 S.W.2d 242 (1943); *Koppers Coal Co. v. Compton,* 285 Ky. 844, 149 S.W.2d 543 (1941); *Splint Coal Corp. v. Williams,* 283 Ky. 47, 140 S.W.2d 661 (1940). We believe that the criteria for establishing dependency in the case of a deceased employee are equally applicable in this case.

■ The provisions of KRS 342.075(1)(a) state that a spouse shall be presumed to be dependent upon a deceased employee whom the spouse had not voluntarily abandoned at the time of the accident, or who having been abandoned by the decedent has not engaged in such conduct since the abandonment as would justify the decedent's action. This court has held that the presumption of dependency under subsection (1)(a) is conclusive and cannot be defeated or contradicted by extraneous testimony where the dependent meets the criteria of that subsection notwithstanding that the dependent spouse may have been employed at the time of the accident. *Yocom v. Hylton,* Ky.App.,

557 S.W.2d 219 (1977); *see White v. Stewart Dry Goods Co.,* Ky., 531 S.W.2d 504 (1975). The board did not err in its determination of Mrs. Bryant's status as a dependent.

## II.

The second question on appeal is whether there was sufficient evidence in the record to support the board's findings of fact as to the nature and extent of Bryant's disability. Purex first contends that the evidence did not support the board's finding that Bryant suffered a 50 percent occupational disability. Purex also contends that the board should have found that Bryant suffered from some degree of active disability prior to the accident. We cannot agree.

Three physicians, Drs. Smith, Barnett and Evans, examined the claimant and testified that he suffered from permanent disability to the body as a whole. Their estimates of the degree of physical impairment varied from 15 to 50 percent overall. In addition, Dr. Jones, the family physician, testified as to Bryant's condition. Although a portion of his testimony dealt with his opinion as to the extent of occupational disability, Dr. Jones's testimony was nevertheless valuable in providing evidence of Bryant's functional impairment since the accident. Furthermore, all the doctors attributed a portion of his ultimate disability to the aggravation of a prior arthritic condition. Dr. Tom Evans, who was appointed by the board to examine the claimant pursuant to KRS 342.315, specifically found that Bryant's present disability was caused one-half by the work-related accident alone and one-half by the arousal of a dormant, nondisabling osteoarthritis of the cervical and lumbar spine. He found no prior active disability.

■ It is the responsibility of the Workmen's Compensation Board to translate functional disability into the percentage of occupational disability. *Pruitt v. Bugg Bros.,* Ky., 547 S.W.2d 123 (1977). Functional disability is a medical question but occupational disability is not. *Whitis v. Southern Belle Dairy, Inc.,* Ky., 434 S.W.2d 645 (1968). Furthermore, the medical testi-

mony need not be totally consistent in order to support a board award. *See Hunter v. Great Lakes Construction Co.,* Ky., 467 S.W.2d 763 (1971). In fact, where there is conflicting medical testimony, the board has the right to believe part of the evidence and disbelieve other parts of the evidence whether it came from the same witness or the same adversary's total proof. *McCloud v. Beth-Elkhorn Corp.,* Ky., 514 S.W.2d 46 (1974); *Wells v. Kentucky Appalachian Industries, Inc.,* Ky., 467 S.W.2d 365 (1971); *Tackett v. Eastern Coal Corp.,* 295 Ky. 422, 174 S.W.2d 707 (1943).

 In addition to the medical testimony relating to his disability, Bryant also testified to his condition. Bryant testified that, prior to his injury, he had no noticeable limitations on lifting, bending, stooping or manual dexterity in general. In his long tenure with his employer, he recalls only having missed one week of work for a respiratory infection and one or two other days for other general ailments. He testified that since the accident his back has been weak and that he has frequently experienced pain in his back, neck, and left leg. He also stated that his left shoulder "catches" when he attempts to raise his arm and that his arm sometimes tingles or is cold and numb. The claimant's own testimony as to his condition has some probative value and may properly be considered by the board. *Ruby Construction Company v. Curling,* Ky., 451 S.W.2d 610 (1970); *Yocum Creek Coal Company v. Jones,* 308 Ky. 335, 214 S.W.2d 410 (1948).

 After carefully reviewing the record, we believe there was sufficient evidence from which the board could properly conclude that Bryant was 50 percent occupationally disabled after his work-related accident. We likewise believe that there is sufficient evidence to support the board's conclusion that three-fourths of the ultimate disability was the result of the arousal of his dormant, nondisabling arthritic condition. We do not believe Purex's contention that the evidence was so compelling that the board was required to find an active disability prior to the accident.

### III.

 Purex also contends that the board erred in using "lost wages" as a factor in calculating the benefits to which Bryant was entitled.

The use of "lost wages" as an alternative basis for the calculation of benefits was addressed and rejected in *Transport Motor Express, Inc. v. Finn,* Ky., 574 S.W.2d 277 (1978), which was decided after the circuit court affirmed the Board in this case. KRS 342.620(9) is a definition section, and the reference to "lost wages" in that section must be construed in light of the purpose of the section in which it appears and in such manner so as to give the intended meaning to related sections. Income benefits are to be awarded on the basis of disability as calculated under KRS 342.730. *Finn, supra.* The effect of the *Finn* decision was to undermine those cases which approve the use of "lost wages" as an alternative basis for the calculation of benefits. *See Kentucky Carbon Corporation v. Dotson,* Ky.App., 573 S.W.2d 368 (1978). We need not reach the contention of the Special Fund that the calculation of benefits based upon "lost wages" violates the Kentucky Constitution and the Due Process and Equal Protection clauses of the U.S. Constitution.

Because the board calculated its award to Bryant based upon his lost wages, the judgment of the circuit court is reversed as to this point with directions that the case be remanded to the Workmen's Compensation Board for a calculation of benefits in accordance with the terms of the *Finn* decision and this court's opinion in *River Coal Company, Inc. v. Mullins,* Ky.App., 25 Ky.L.Summ. 14 (October 13, 1978). In all other respects, the judgment of the circuit court is affirmed.

All concur.