John Calhoun WELLS, Commissioner of Labor and Custodian of the Special Fund, Successor to Eugene F. Land, and Eastern Coal Corporation, Movants,

v.

John D. WHITE and Workers' Compensation Board, Respondents.

Supreme Court of Kentucky.

March 30, 1983.

Cyril E. Shadowen, Asst. Counsel, Dept. of Labor, Louisville, for movant Land.

William J. Baird, III, Baird & Baird, Pikeville, for movant Eastern Coal Corp.

R. Roland Case, Kelsey E. Friend Law Firm, Pikeville, for respondent White.

OPINION OF THE COURT

After consideration of oral argument and briefs, the opinion of the Court of Appeals by Judge Wilhoit, as set forth below, is hereby adopted as the opinion of this court.

"John D. White was awarded workers' compensation benefits for total permanent disability arising from a work-related injury occurring on July 11, 1978. The Workers' Compensation Board calculated the amount of this award utilizing the methodology approved by the Supreme Court in *Transport Motor Express, Inc. v. Finn*, Ky., 574 S.W.2d 277 (1978). On review, the Pike Circuit Court set aside the Board's calculation and directed it to enter an order which increased the claimant's weekly benefits, basing its judgment on two 1978 amendments to the Workers' Compensation Act. From this judgment, the Special Fund and the claimant's employer appeal.

The Board found that White's average weekly wage was $338.80, which under *Finn, supra*, it reduced to $112.00 (the applicable statutory maximum under KRS 342.-740) before apportioning forty percent against the employer as resulting from the injury itself and forty percent against the Special Fund as resulting from arousal of a dormant, nondisabling condition; the remaining twenty percent was found to be noncompensable as prior active disability. Under the Board's order, the Special Fund and the employer were each required to pay White $44.80 weekly.

The circuit court, relying on the 1978 amendments to KRS 342.120(5) and KRS 342.620(20), directed the Board to award the claimant $112.00 weekly, to be paid in equal halves of $56.00 each by the Fund and the employer. The court reached this result by concluding that the claimant's weekly benefits would be 66⅔% of his average weekly wage of $338.80 times 80% (the percentage of disability caused by the injury), i.e., $180.70 weekly. Since this amount exceeded the statutory maximum, the court reduced it to $112.00 before dividing it pro-

portionately between the Fund and the employer.

KRS 342.120(5) (1978)[1] provided:

'If it is found that the employe is a person mentioned in paragraphs (a) or (b) of subsection (1) of this section, and a subsequent compensable injury or occupational disease has resulted in additional permanent disability, so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, and when applying the formula for income benefits to the employer's and special fund's percentage of disability, and the income benefits exceed the limitation contained in KRS 342.740, then in that event the special fund's and employer's liability shall be reduced proportionately to the point where the shares of each, when combined, do not exceed the limitation established by KRS 342.740.'

KRS 342.620(20) (1978)[2] provided, in relevant part:

'Except as otherwise provided in KRS 342.750, the formula for income benefits shall be sixty-six and two-thirds percent (66⅔%) of the average weekly wages of the employe at the time of his injury, multiplied by the percentage of disability caused by injury or occupational disease, subject to the limitation contained in KRS 342.740.'

KRS 342.750, dealing with income benefits for death, has no application here.

The appellants argue that, notwithstanding these provisions, the *Finn* methodology continued to be governing because doing otherwise would render ineffective the exclusion for prior active disability contained in KRS 342.120(4). They maintain that KRS 342.620(20) (1978) has no application to prior active disability and that KRS 342.-120(4), which does, should prevail over it.

We cannot agree with this argument. The statutory provisions set out above were not in effect at the time of the injury in *Finn*. There the Court noted that '[t]he apportionment function [under KRS 342.-120] is separate and distinct from the function provided for in KRS 342.730[,]' and that '[n]o other section . . . has as its objective the computation of an actual dollar amount—that statement applies with particular force to KRS 342.120.' 574 S.W.2d at 280. The enactment of KRS 342.120(5) (1978) changed this. It is manifest that this subsection, when taken with KRS 342.-620(20) (1978), established the method of computation for subsequent injury claims; the circuit court correctly applied the law and properly reversed the Board's order.

In *Finn,* the Supreme Court had to interpret the then-existing statutes to give meaning to the exclusion for prior active disability contained in KRS 342.120(4); in the absence of clear statutory direction, it felt that it 'ha[d] no choice but to give effect to this exclusion[,]' at 574 S.W.2d at 282, by applying the percentage of noncompensable, prior active disability to the claimant's average weekly wage *after* reduction under KRS 342.740. By mandating that a claimant's compensable weekly earnings (66⅔% of his average weekly wage) be multiplied by the percentage of disability caused by the injury or occupational disease, the Legislature clearly indicated an intention to exclude the noncompensable percentage at this level *before* application of the KRS 342.740 ceiling. The definition subsection applies, by its terms, to all calculations except those for death benefits. We find it significant that KRS 342.120(5) (1978) includes no provision for proportionately reducing a noncompensable share of a claimant's income benefits due to prior active disability in order for an award not to exceed the statutory maximum when it mandates such proportionate reduction for the shares of the Special Fund and the

1. Enacted, 1978 Ky.Acts ch. 256, Sec. 1, effective June 17, 1978; repealed, 1980 Ky.Acts ch. 104, Sec. 3, effective July 15, 1980.

2. Enacted, 1978 Ky.Acts ch. 256, Sec. 3, effective June 17, 1978, repealed, 1980 Ky.Acts ch. 104, Sec. 13, effective July 15, 1980.

employer. This can only be because the noncompensable portion of a claimant's income benefits has already been excluded by the formula for income benefits referred to within KRS 342.120(5) (1978) and defined in KRS 342.620(20) (1978).

The appellants would have us disregard the 1978 amendments and retain the *Finn* methodology. Such a course would be contrary to well-established principles of statutory construction. 'All statutes are presumed to be enacted for the furtherance of a purpose on the part of the legislature and should be construed so as to accomplish that end rather than to render them nugatory.' *Commonwealth ex rel Martin v. Tom Moore Distillery Co.,* 287 Ky. 125, 152 S.W.2d 962, 967 (1941). The rule that a specific statute controls a more general one is firmly established in the law of the Commonwealth. *Heady v. Commonwealth,* Ky., 597 S.W.2d 613 (1980); *Gish v. Shaver,* 140 Ky. 647, 131 S.W. 515 (1910). KRS 342.120(5) (1978) specifically set forth the manner by which the claimant's award was to be calculated.

We are not unaware that our holding adopts the same concept of exclusion that the Supreme Court rejected in *Finn, supra.* However, given the plain language of the statutory amendments of 1978 which were not in effect at the time of the injury in *Finn,* we believe this course has been mandated by the Legislature. Of course, because these statutes have been repealed, their application, as well as that of this opinion, is restricted to injuries occurring while they were in force."

The opinion of the Court of Appeals is hereby affirmed.

All concur except VANCE, J., who files a dissenting opinion.

VANCE, Justice, dissenting.

I must respectfully dissent from the opinion adopted by the majority. The employee is now totally disabled. Twenty percent of his occupational disability was a prior active disability, 40% of the disability was caused by a work-connected injury, and 40% was the result of the arousal of a dormant non-disabling disease or condition into disabling reality. The net effect of the opinion is that an employer is required to pay 50% of the total award when the work-connected injury caused only 40% of the disability. The employer ends up paying an award for disability which existed before the employment.

One of the primary purposes behind the creation of the Special Fund was to encourage the employment of partially disabled people. Employers were loathe to employ or retain in their employment, a partially disabled person for fear that a subsequent injury would cause total disability and subject the employer to increased workers' compensation liability. 2 Larson, *Workmen's Compensation Law,* "Purpose of Second Injury Funds", § 59.31(a).

The creation of subsequent injury compensation protected the employer from paying more compensation benefits than the percentage of the disability caused by the work-related injury alone. The percentage of occupational disability which existed prior to the subsequent injury was noncompensable (K.R.S. 342.120(4)) and the remaining percentage fell upon the Special Fund. *Young v. Fulkerson,* Ky., 463 S.W.2d 118 (1971).

In 1978 the general assembly enacted K.R.S. 342.120(5) and K.R.S. 342.620(20) which relate to the computation of income benefits and the apportionment between the employer and the Special Fund. These enactments did not expressly repeal K.R.S. 342.120(4) which excluded an award for pre-existing disability. This opinion negates K.R.S. 342.120(4) upon the basis that the passage of the two 1978 amendments indicated an intent of the legislature to do so, not expressly but by implication.

I find no basis for an implied legislative intent to repeal K.R.S. 342.120(4) by the enactment of the 1978 amendments. My conclusion is reinforced by the fact that subsequent legislation has made it clear once again that an employer shall not be assessed for a greater proportion of an award than the percentage of occupational disability caused by the subsequent injury.

When considered in the light of the beneficial purpose for which subsequent injury legislation was enacted, the 1978 amendments do not compel, and in my judgment do not permit, the construction given them by this opinion. The result is an immediate benefit for this one claimant, but employers will be warned that if they employ the partially disabled or handicapped or retain them in their employment, they run the risk of increased workers' compensation liability in the event of a subsequent injury above that which would have occurred if they had excluded partially disabled persons from employment. The tendency would be to refuse to hire any more crippled, disabled, or handicapped people and perhaps to fire any such people already employed. This is a high price to exact from partially disabled workers just to extend additional compensation to this claimant, especially where this result is not specifically mandated.

As the opinion points out, legislation enacted in 1982 completely overturns the result of this opinion for the future, but those employers saddled with awards between 1978 and 1982 and bound by this opinion may well continue to be "once bitten, ever wary."