TRANSPORT MOTOR EXPRESS, INC. Michigan Mutual Insurance Co. and/or Michigan Mutual Liability Co., Appellants,

v.

William F. FINN, James R. Yocom, Commissioner of Labor and Custodian of the Special Fund Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

Oct. 7, 1977.

As Modified Oct. 18, 1977.

Discretionary Review Granted Dec. 7, 1977.

Larry L. Johnson, William P. Swain, Thomas H. Watson, Boehl, Stopher, Graves, & Deindoerfer, Louisville, for appellants.

Buel L. Cox, Louisville, John Riehl, Jr., Asst. Counsel, Dept. of Labor, Louisville, Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, for appellees.

GANT, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court affirming an award of the Workmen's Compensation Board to the appellee in the amount of $35.97 per week from the employer and $35.97 from the Special Fund. The facts are not in dispute, both appellants and appellees agreeing that the sole questions are questions of law and not fact. The agreed facts are as follows:

1. The appellee is 100% disabled at the present time.

2. Appellee had a prior disability which had been previously compensated by various methods to the extent of 50%.

3. 25% of appellee's disability is attributable to his work-related injury.

4. 25% of the appellee's disability is attributable to the arousal into further disabling reality of a pre-existing dormant condition.

5. Appellee's average weekly wage at the time of the injury was $261.60.

6. The maximum award permitted, at the time of the injury, under KRS 342.-740(1) was $84.00.

The first argument of the appellants is concerned with the procedure followed by which the final award was reached. The Board entered its first opinion on October 18, 1976, awarding the appellee $71.94 per week, payable equally by the appellants and the Special Fund. Appellants filed a petition for reconsideration and the Board reduced the award to $42.00 per week, again divided equally, by its order dated November 15, 1976. On November 22, 1976, appellee filed a motion to set aside the November 15 order on the grounds of mistake in the manner of computation, which motion was sustained and the original award was restored. The appellants argue that KRS 342.281 requires the claimant to file a petition for reconsideration within 14 days after the award is made and that his failure to do so bars reconsideration by the Board. However, in the instant case, the claimant had no reason to ask the Board for reconsideration of its original award and it was only the subsequent award that was objectionable to him. His motion was filed within seven days of the order reducing the payment.

This Court is aware of the fact that some confusion exists in the recent Workmen's Compensation cases and we will therefore present to the Workmen's Compensation Board, the lower courts and to the practicing attorneys the formula to be used in computing percentages and compen-

sation and apply this formula to the instant case. This formula shall pertain to all cases of permanent total disability *and* permanent partial disability.

### PERCENTAGE COMPUTATIONS

STEP 1. The Workmen's Compensation Board shall translate the percentage of functional disability into the percentage of occupational disability. *Pruitt v. Bugg Brothers*, Ky., 547 S.W.2d 123 (1977). The percentage of occupational disability attributable to the employer, non-compensable disability and the Special Fund shall be fixed by the Board in the following order and in the following manner (*Young v. Fulkerson*, Ky., 463 S.W.2d 118 [1971]; *Yocom v. Spalding*, Ky., 547 S.W.2d 442 [1977]):

(a) Determine the employer's percentage of liability by affixing the percentage of disability attributable to his work-related injury alone. *Young v. Young*, Ky., 460 S.W.2d 832 (1970); *Young v. Fulkerson, supra*. In the instant case this was done and that percentage was fixed at 25%.

(b) Determine the percentage attributable to the non-compensable or non-compensated disability or disabilities. This computation is for the sole purpose of assistance in computing percentage attributable to the employer and the Special Fund. It is never used again in compensation computations set out herein. In the instant case, the appellants urged that KRS 342.120(4) requires that any prior disability, whether compensated or not, shall be excluded from consideration. With this we agree, but "excluded" does not mean "deducted from" the compensation. As this Court stated in *Yocom v. Reid*, Ky.App., 24 Ky.L.Summ. 9 (June 17, 1977):

> In no event shall the non-compensable disability be applied to reduce the allowable income benefits which a claimant may receive as long as those benefits do not exceed the maximum as set forth in KRS 342.740. The amount assignable to non-compensable disability is already excluded by the method of determination.

Additionally, KRS 342.120(4) is available only to reduce the liability of the Special Fund and not to reduce the liability of the employer.

In this case, the non-compensable percentage was fixed at 50%.

(c) Determine the percentage of liability of the Special Fund, if any, under KRS 342.120. This percentage shall be the percentage of disability remaining after deducting the portion attributable solely to the work-related injury and the non-compensable or non-compensated disability or disabilities. In other words, the sum of (a), (b), and (c) must equal the total *percentage* of the claimant's disability as found by the Board. *Young v. Young, supra*. In the instant case, the Board fixed this percentage at 25%, and the total of the three percentages equalled 100%, the total percentage of claimant's disability as found by the Board.

### COMPENSATION COMPUTATIONS

STEP 2. Determine the greater of:

(a) Lost wages. *Mills v. Parsley*, Ky. App., 24 Ky.L.Summ. 7 (May 20, 1977); *Apache Coal Co. v. Fuller*, Ky., 541 S.W.2d 933 (1976); *Bartley & Bartley Coal Co. v. Ratliff*, Ky.App., 24 Ky.L.Summ. 8 (May 27, 1977); *Liberty Engineering and Manufacturing Co. v. Granger*, Ky.App., 548 S.W.2d 845 (1977); or

(b) 55% of the claimant's average weekly wage as defined by KRS 342.140 and two and one-half per cent (2.5%) of his average weekly wage for each dependent as defined by KRS 342.075, up to a maximum of three. KRS 342.730(1). For claims filed after January 1, 1977, this percentage shall be 66⅔%, irrespective of the number of dependents. The claimant here had no dependents and applying the 55% to his average weekly wage of $261.60 we arrive at the sum of $143.88.

STEP 3. Determine the weekly maximum income benefits as per KRS 342.-740(1). This is computed by taking 60% of the average weekly wage of the state as prescribed by KRS 342.143. In any event, this sum shall not exceed the average weekly wage of the injured employee.

It was stipulated herein that the weekly maximum income benefits at the time of this injury were $84.00.

STEP 4. EMPLOYER. Determine the compensation payable by the employer by multiplying the percentage attributable to him as found in Step 1(a) by the amount found under Step 2. *C. E. Pennington Co., Inc. v. Winburn*, Ky., 537 S.W.2d 167 (1976); *Yocom v. Hopkins*, Ky.App., 548 S.W.2d 151 (1977); *Yocom v. Reid*, Ky.App., 24 Ky.L. Summ. 9 (June 17, 1977).

(a) If this product is equal to or greater than the maximum weekly benefits in Step 3 then the employer's liability is fixed at the amount as computed in Step 3 and this is the total compensation to be paid to the claimant. In this event, the computations would cease here. KRS 342.740(1).

In the case before us, the Board properly applied this procedure and multiplied the 25% disability attributable to the employer times the $143.88 arrived at under Step 2(b) and affixed the employer's liability at $35.97.

(b) SPECIAL FUND. If the employer's liability as computed hereinabove is less than the amount as set forth in Step 3, then the maximum liability of the Special Fund shall be determined by multiplying Step 1(c) by Step 2. The Special Fund's actual liability is then determined in the following manner:

(i) If the sum of the employer's liability and the allowable Special Fund's liability is less than Step 3, then the Special Fund's liability is equal to the allowable Special Fund liability as computed above.

(ii) If the sum of the employer's liability and the allowable Special Fund liability is greater than Step 3, then the amount payable by the Special Fund is the difference between the employer's liability and Step 3, the maximum weekly income benefits.

In this case, the Board properly applied this formula and multiplied the 25% determined under Step 1(c) times the amount determined in Step 2(b) and arrived at the liability of the Special Fund in the amount of $35.97. The sum total of both the employer and the Special Fund was $71.94, being less than the maximum weekly income benefits as per KRS 342.740(1) and thus the allowable amount was payable by the Special Fund.

Had the claimant herein cross-appealed, he would have been entitled to lost wages as indicated in Step 2(a), as the stipulated fact that he was totally and permanently disabled establishes that his loss of wages was $261.60. This formula as herein set out would have imposed a liability on the employer of 25% of that amount, which would have been $65.40, and the liability of the Special Fund would have been $18.60, as computed by Step 4(b)(ii), above. See KRS 342.620(9); KRS 342.730(1)(b). Also, the Special Fund did not raise this issue on appeal.

STEP 5. PREVIOUS AWARD, SETTLEMENT OR VOLUNTARY PAYMENT. Where a claimant is receiving compensation from a previous award, including schedule losses under KRS 342.730(1)(c), settlement or voluntary payments the compensation shall be computed as follows:

(a) Deduct the amount of the weekly payments for the prior disability from the amount determined in Step 3. *Osborne Mining Corp. v. Blackburn*, Ky., 397 S.W.2d 144 (1965); *Cabe v. Skeens*, Ky., 422 S.W.2d 884 (1967). The difference shall then constitute the new weekly maximum income benefits to be used in the computations in Step 4 in lieu of the amount originally determined in Step 3.

(b) When the amounts due from the previous award, settlement or voluntary payments are exhausted, the liability of the employer and the Special Fund shall be determined in Step 4 by using the original weekly maximum income benefits determined in Step 3. See 2 *Larson's Workmen's Compensation Law*, 59.41 at 10–341; 59.42 at 10–345.

A claimant is deemed to be receiving compensation whether it is from periodic payments or from a previous lump sum payment calculated over a period of time which overlaps with the period of time of

compensation now under consideration. If the previous compensation was in a lump sum payment, the amount of the previous compensation for purposes of these computations is the amount and period of time of compensation as found by the Board and not the lump sum award actually received by the claimant distributed over the time of the compensation. *General Refractories Co. v. Herron*, Ky.App., 566 S.W.2d 433 (1977).

In the instant case, the evidence disclosed that the claimant had received some payment for a dislocation of the right shoulder in the 1960's, a disability to his hand for which he had received further payments and that both of these payments had ceased prior to this injury so that Step 5 was not applicable herein. Additionally, the claimant had received a disabling injury at the hands of a third party and, although he had made claims against both the third party and his employer under his Workmen's Compensation, the recovery was had from the third party and no disability payments had been made under Workmen's Compensation.

█ It is the opinion of this Court that the formula above set out was properly followed by the Workmen's Compensation Board and the judgment of the lower court is affirmed.

To avoid confusion and to enable preparation for the making of the determinations required under this opinion, this opinion will have prospective application only, and shall not constitute grounds for review of previous awards as provided in KRS 342.-125.

All concur.

PARK, J., concurs in the result by separate opinion, in which MARTIN, C. J., and WILHOIT, J., join.

VANCE, J., also concurs by separate opinion.

PARK, Judge, concurring, with whom MARTIN, C. J., and WILHOIT, J., join, concurring in the result.

I agree with the decision in this case. I disagree only with that portion of the opinion which discusses "lost wages." Step 2(a) dealing with "lost wages" has no part in the computation of income benefits, and the claimant would not have been entitled to 100% of lost wages had he cross-appealed.

Lost wages are important for the purpose of determining whether there is disability and, if so, the degree of disability. However, 100% of lost wages should not be awarded as income benefits under the workmen's compensation act. To award 100% of lost wages as income benefits violates every accepted theory of American workmen's compensation law. Furthermore, an award of 100% of lost wages is not justified by the language of the present Kentucky Workmen's Compensation Act.

One of the most important objectives of workmen's compensation laws is the replacement of wages lost by employees disabled by job-related injury or sickness. *Compendium on Workmen's Compensation* (National Commission on State Workmen's Compensation Laws, 1973) pg. 24. Workmen's compensation is essentially a form of income insurance. Larson, "Basic Concepts & Objectives of Workmen's Compensation," 1 *Supplemental Studies for the National Commission on State Workmen's Compensation Laws* pgs. 31–34 (1973). If workmen's compensation is considered to be a form of income insurance protecting employees against wage loss, it might appear proper to award 100% of lost wages as a form of income benefits. However, the workmen's compensation law of no other jurisdiction awards an injured employee 100% of his lost wages as a form of income benefits. There are two fundamental reasons why income benefits are based upon a percentage of the employee's lost wages.

First, rehabilitation and return to productive employment is also one of the most important objectives of workmen's compensation. *Compendium on Workmen's Compensation, op. cit.*, pg. 25. If an employee receives 100% of his wage loss there is no incentive for him to return to work. In order to provide an incentive for the em-

ployee to return to work and a disincentive to remain unemployed, workmen's compensation laws customarily provide income benefits that are less than 100% of the employee's wages lost. Berkowitz, "Workmen's Compensation Income Benefits: Their Adequacy and Equity," 1 *Supplemental Studies for the National Commission on State Workmen's Compensation Laws*, pgs. 191 & 196.

Second, if an employee receives 100% of lost wages in the form of workmen's compensation income benefits, he will have more spendable income than he received while employed. Income benefits under workmen's compensation laws are not subject to income taxation. 26 U.S.C. § 104(a)(1). This is particularly important for high wage employees. However, even low wage earners avoid the necessity of social security deductions. Consequently, workmen's compensation laws do not pay income benefits equal to 100% of pre-tax lost wages. Berkowitz, *op. cit.*, pg. 196.

In 1963 and 1965, the Council of State Governments published a suggested "Workmen's Compensation and Rehabilitation Law" which is often referred to as the Model Act. Under Section 15 of the Model Act, income benefits for total disability are based upon 55% of the employee's average weekly wage plus 2½% of his average weekly wage for each dependent up to a maximum of five. In the case of partial disability, the employee's income benefits are 55% of his decrease in wage earning capacity plus 2½% of his average weekly wage for each dependent up to a maximum of five. The Model Act also provided an alternative formula using 66⅔% with no addition for dependents. In 1972, the National Commission on State Workmen's Compensation Laws recommended that benefits for total disability be at least 66⅔% of the employee's gross weekly wage. After a transition period, the commission recommended that benefits for total disability be at least 80% of the employee's *spendable* weekly earnings. *The Report of the National Commission on State Workmen's Compensation Law* (1972), Recommendations R 3.12 and R 3.13. The Council of State Governments

adopted the initial recommendation of the National Commission. Under suggested legislation proposed in 1973 by the Council of State Governments, income benefits for total disability would be 66⅔% of the employee's average weekly wage. *Workmen's Compensation: A Challenge to the States, A Report of Advisory Committee on Workmen's Compensation Laws of the Council of State Governments* (1973), ch. 3. Neither the Model Act nor the Report of the National Commission recommends that an employee receive income benefits equal to 100% of wages lost. No state pays 100% of an employee's wages for permanent disability benefits. 4 *Larson's Workmen's Compensation Law* (1973), Appendix B, Table 8. I do not believe that the Kentucky Workmen's Compensation Act can, or should, be construed to authorize income benefits equal to 100% of an employee's lost wages.

The basic income benefits payable under the act are set forth in KRS 342.730(1)(a) and (b). Under the 1972 amendment, the employee receives income benefits for total disability equal to 55% of his average weekly wage during disability and 2½% of his average weekly wage for each dependent up to a maximum of three. This provision clearly is based upon Section 15 of the Model Act as proposed in 1963. In 1976, KRS 342.730(1)(a) was amended to provide for total disability income benefits equal to 66⅔% of the employee's average weekly wage without any addition for dependents. 1976 Ky. Special Session Acts, ch. 26, § 1. The 1976 amendments follow the recommendations in the Report of the National Commission and the 1973 suggested legislation of the Council of State Governments. There is absolutely no language in KRS 342.730(1)(a) as enacted in 1972 and amended in 1976 which would support the conclusion that an employee is entitled to 100% of his wages lost in the case of total disability.

Nevertheless, this court in *Mills v. Parsley*, Ky.App., 24 Ky.L.Summ. 7 at 12 (May 20, 1977) held that a totally disabled employee was entitled to receive 100% of his average weekly wage subject only to the limitations of KRS 342.740(1) which provides that the maximum weekly income

benefit shall not exceed 60% of the state average weekly wage. This decision was not based upon any provision of KRS 342.730, the only section of the law specifically relating to income benefits. The decision was based solely upon certain language contained within the *definition* of the term "disability" set forth in KRS 342.620(9). Within the definition of disability, the statute contains the following provision:

> A person who has lost wages by reason of his disability, and who is otherwise eligible for compensation, is entitled to compensation during the compensable period in an amount equal to the wages lost, so long as this amount does not exceed the applicable maximum compensation.

In the *Parsley* case, the court purported to give recognition to the rule of statutory construction that, " 'where two statutes seemingly conflict, courts must harmonize them and give them such construction as will give effect to each other if possible.' " Unfortunately, the construction given the workmen's compensation laws in the *Parsley* case renders the income benefit statute, KRS 342.730(1)(a), totally meaningless. Under the definition of disability contained in KRS 342.620(9), for the purposes of determining "wages lost" it is assumed that "wage earning capacity prior to injury is the average weekly wage as calculated under KRS 342.140." If the *Parsley* decision is correct, a totally disabled employee will always be entitled to 100% of his average weekly wage, subject only to the limitation imposed by KRS 342.740(1). If the totally disabled employee is entitled to 100% of his average weekly wage by virtue of the definition of disability contained in KRS 342.620(9), the legislature did a stupid and useless act at the 1976 special session when it amended the income benefits statute to provide that a totally disabled employee should receive 66⅔% of his average weekly wage, subject to the limitations of KRS 342.740(1).

The decision in *Mills v. Parsley, supra,* does not harmonize KRS 342.620(9) and KRS 342.730(1)(a). The two statutes can be harmonized only if the definition statute, KRS 342.620(9) is utilized for the purpose of determining the degree of disability. After the degree of disability is determined, the amount of income benefits can be determined under KRS 342.730(1)(a). If the language in the statute relied on by the court in the *Parsley* case was intended to measure the amount of income benefits, then it should appear in the section of the statutes dealing with income benefits, rather than the section of the statutes defining disability. If the two provisions of the act are in irreconcilable conflict, then I would apply the rule adopted in *Gish v. Shaver,* 140 Ky. 647, 131 S.W. 515, 516 (1910):

> "Where there is an irreconcilable conflict between different parts of the same act, the last in order of position must control, or the clause which is directed specially to the matter in preference to others mentioning it incidentally only."

KRS 342.620(9) was enacted as Section 2 of the 1972 act; KRS 342.730(1)(a) was enacted as Section 14 of the 1972 act. (1972 Ky.Acts, ch. 78.) KRS 342.730(1)(a) deals directly with income benefits for total disability; KRS 342.620(9) deals with income benefits incidentally to the definition of "disability." KRS 342.730(1)(a) follows the Model Act and, as amended, follows the recommendations of the National Commission. On the other hand, the language from the disability definition would introduce a revolutionary concept to the American law of workmen's compensation. For those reasons, I believe the decision *Mills v. Parsley, supra* was wrong. Step 2(a) has no part in the computation formula set forth in the majority opinion.

To award 100% of lost wages would defeat one of the fundamental purposes of the Workmen's Compensation Act, rehabilitation. See KRS 342.710(1). As the award will not be subject to taxation, the employee would be better off from the viewpoint of spendable income than he was before the injury.

This case and *Mills v. Parsley, supra,* both involve total disability. Nevertheless, the compensation computation formula set forth in the majority opinion is applicable to cases of partial disability. A related but

slightly different question is presented with respect to awarding 100% of lost wages as income benefits for partial disability. The income benefits statute, KRS 342.730(1)(b), originally provided that the employee was to be paid 55% of his average weekly earnings, plus 2½% of his average weekly wage for each dependent up to a maximum of three, multiplied by the percentage of his work related disability. This provision was clearly based on Section 15 of the Model Act as originally proposed in 1963. As amended at the 1976 special session, the statute provides that the partially disabled employee shall be paid 66⅔% of his average weekly wage multiplied by the percentage of his work related disability, without any addition for dependents. This amendment also brings the Kentucky statute into conformity with the recommendations of the National Commission and the most recent proposed legislation by the Council of State Governments.

However, the income benefits statute also provides that benefits for partial disability shall be "based on lost wages or body functional disability benefits, whichever is greater." In *Liberty Engineering & Mfg. Co. v. Granger*, Ky.App., 548 S.W.2d 845, 846 (1977), this court stated:

> It is our conclusion that "lost wages" as used in KRS 342.730(1)(b), refers to either a present loss of wages or probable future loss of wages as a result of shortening of work life or reduction of future work opportunities caused by an injury of appreciable proportions.

The income benefits statute provides that benefits shall be "based" on lost wages or body functional disability. This does not mean that the benefits shall equal 100% of lost wages. It means no more than that lost wages may be used to calculate the degree of disability. Even if there is no present wage loss, an award of benefits can be made for future impairment of earning capacity. This construction of the income benefit statute is in harmony with the landmark decision in *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968).

It is true that the definition section, KRS 342.620(9), provides that an employee entitled to partial disability benefits "shall be entitled to either his lost wages due to his injury, or body functional disability benefits, whichever is greater." For the reasons set forth above with respect to total disability benefits, I do not believe that this additional language in the definition section was intended to override the specific language of the income benefits section. Nevertheless, I must acknowledge that a contrary construction was adopted by the Supreme Court in *Apache Coal Company v. Fuller*, Ky., 541 S.W.2d 933 (1976). However, the language in the *Apache* decision was dictum inasmuch as the employee in that case had no present wage loss. I also concede that I participated in the decision in *Bartley & Bartley Coal Company v. Ratliff*, Ky.App., 24 Ky.L.Summ. 8 at 10 (May 27, 1977), in which this court approved the approach taken in the *Apache* case. However, the reference to *Apache* in the *Bartley* case was also dictum as the employee was entitled to the maximum weekly benefits allowed when income benefits were calculated under KRS 342.730(1)(a) and 342.120. Furthermore, I believe the error of this construction of the workmen's compensation law can be demonstrated by an example.

Assume an employee with average weekly wages of $420.00. As a result of a work related injury, the employee is unable to perform his regular work, but he is able to secure regular employment at $336.00 per week. He has lost wages of $84.00 per week. If the definition section (rather than the income benefit section) is used to determine income benefits, the employee will receive annual income benefits of $4,368.00 ($84 × 52 weeks). This sum will be tax free. His gross income will be the same as before the injury, but his spendable income will be greater. There will be no incentive for rehabilitation. There will be no reason for the employee to attempt to return to his old work. To return to his old job will only result in his paying income taxes on the amount which he is receiving tax free under the workmen's compensation law. I do not believe that such a result was intended by the legislature.

For the foregoing reasons, I cannot agree with the portion of the majority opinion which would provide income benefits equal to 100% of lost wages. By this concurring opinion, I hope that the need for reviewing this area of the workmen's compensation law can be demonstrated to the Supreme Court and that the problem will be considered by the legislature.

VANCE, Judge, concurring.

I concur in the result reached in this case. I fully agree with the concurring opinion of Judge Park that lost wages are used only to determine the percentage of occupational disability.

I do not agree with the conclusion of the majority expressed in step 1(b) that prior disability is never used except to determine the percentage of disability attributable to the employer and to the special fund.

It seems plain to me that the special fund is liable only for that percentage of disability by which the combined effects of injury and aggravation exceed the disability attributable to the injury alone. Disability attributable to the prior injury is excluded. KRS 342.120(4).

The result reached in the majority opinion is correct only because of the holding in *C.E. Pennington Co., Inc. v. Winburn*, Ky., 537 S.W.2d 167 (1976) that permits a partially disabled worker to receive the maximum compensation benefits in some cases. Except for that decision, I would limit the award in this case to $42.00 per week. *Yocom v. Layne*, Ky., 553 S.W.2d 52 (1977) recognizes that there should be deducted from the award a sum equal to the percentage of disability attributable to a prior disability.