**MISSOURI HIGHWAY AND TRANS-PORTATION COMMISSION,**
Plaintiff-Appellant,

v.

**Rosemary MAUER,**
Defendant-Respondent.

No. 51758.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 28, 1987.

Paul Ferber, Asst. Counsel, Kirkwood, Rich Tiemeyer, Chief Counsel, Rodney D. Gray, Asst. Counsel, Jefferson City, for plaintiff-appellant.

Donald Kenneth Anderson, Jr., St. Louis, for defendant-respondent.

REINHARD, Judge.

Plaintiff brought this action alleging that a section of its guardrail along Interstate 270 in St. Louis County was damaged as a result of defendant's negligence. A jury trial resulted in a $2,587.16 verdict for plaintiff; however, the trial court granted defendant's motion for new trial based upon perceived error in the submission of plaintiff's verdict directing instruction. Plaintiff appeals. We reverse and remand.

Plaintiff's evidence consisted principally of excerpts from the depositions of defendant and Howard Pimpton, a truck driver for Roadway Express who was also involved in the automobile collision which damaged plaintiff's guardrail. Pimpton was proceeding southwest in his tractor-trailer on Interstate 270 near McDonnell Boulevard at approximately 8:00 a.m. on November 10, 1981. I–270 is three lanes wide at that point, and Pimpton testified that he was traveling in the center lane at fifty miles per hour. He noticed defendant's car coming down the access ramp from McDonnell Boulevard to merge with the southwest bound traffic on I–270. Pimpton described what occurred next as follows:

Just as [defendant] entered the first lane, she attempted to duck out and pass a slow-moving vehicle right in front of her. And she came over, attempted to pass and couldn't get in because there I sit. And she tried to go back into the other lane. By that time, she had al-

ready taken over the other slow-moving vehicle and she hit the brakes. And at that particular instance (sic) she was straddling both lanes.

Pimpton stated that when defendant made her move from the right lane to the center lane his truck was so close that he could not see the rear of her car.

Pimpton's truck collided with defendant's car, the right front fender and wheel of the truck striking the "left rear quarter of the tail section" of the car. The right front wheel of the truck rolled up onto the car, causing the car to be thrown to the left and the truck to the right. The truck proceeded into a guardrail located on the right side of the highway.

Pimpton testified that "only a few seconds" elapsed between the time defendant attempted to move from the right lane and the moment of impact. He testified that he applied his brakes and sounded his horn but had no opportunity to avoid the accident because of the proximity of defendant's car when she started to change lanes. When the collision occurred defendant's vehicle was "straddling both lanes." This testimony is corroborated by the evidence pertaining to the points of impact on the vehicles.

Defendant's deposition indicated that as she entered the right lane from the access ramp she checked to her left and saw no approaching traffic in the center or left lanes. She did not look into her rearview mirror; instead she "looked out her window," although she could not "remember if [she] looked through the back window." The sun "caught" her eyes and when she turned back around the traffic in front of her "had suddenly slowed dramatically." At that point she was traveling in the right lane. She "remembered there was nothing in the middle lane, so [she] went to turn into the middle lane to avoid hitting the car in front of [her]." Her speed as she attempted that maneuver was "fifty and accelerating." She was not sure how long she was in the center lane prior to the accident, although she said "a minute is probably too long" and estimated she was in the lane "maybe for a second."

Defendant's evidence consisted of her testimony. Although her estimates of time and distance were hardly a model of consistency and clarity, her testimony at trial was similar in many respects to the portions of the deposition read by plaintiff. We need not recite defendant's evidence in detail.

The jury returned a verdict for plaintiff in the amount of $2,587.16. Defendant filed a motion for new trial which the court sustained "under paragraph 4" of the motion. In paragraph 4 defendant had posited error in the submission of plaintiff's verdict director, contending that it was an improper modification of MAI 17.02 and constituted "a roving commission for the jury to ascertain negligence on the part of the defendant." Defendant further contended that "the first portion of paragraph [one]" was unsupported by the evidence.

The challenged instruction reads as follows:

Your verdict must be for plaintiff if you believe:

First, either:

*defendant moved her vehicle from the right lane before first ascertaining that such movement could be made with safety,* or defendant suddenly turned to the left at a time when such movement could not be made with reasonable safety.

and

Second, defendant in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

(Emphasis added.) We are concerned here only with the portion of the instruction which we have emphasized.

■ Plaintiff's theory of negligence pertaining to the lane change is based upon § 304.015(5)(1), RSMo 1986, which provides:

5. Whenever any roadway has been divided into three or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply:

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

There is no MAI instruction pertaining to this statute; however, "in cases of statutory violation it is generally sufficient to couch a verdict directing instruction substantially in the language of the statute unless the statutory language requires construction." *May v. Bradford*, 369 S.W.2d 225, 228 (Mo.1963). The pertinent portion of § 304.015 is clear and does not require construction. *Id.*

In *Furlow v. Laclede Cab Co.*, 502 S.W.2d 373 (Mo.App.1973), we found no error in an instruction submitted pursuant to § 304.015(5)(1) which stated:

Your verdict must be for plaintiff and against defendants Laclede Cab Company and its driver Frank G. Huttig if you believe:

First, defendant Huttig moved his cab from his lane of traffic when it was not safe to do so, and

Second, defendant Huttig was thereby negligent, and

Third, such negligence either directly caused damage to plaintiff or combined with acts of Raymond Clark to directly cause damage to plaintiff.

*Id.* at 377–78.

■ We believe plaintiff's verdict directing instruction substantially followed the language of § 304.015(5)(1) and is in substantially the same form as the instruction in *Furlow*. It correctly states the law and is not an improper modification of MAI. Defendant seeks to distinguish *Furlow* by pointing out that plaintiff's instruction referred to the "right lane" while the instruction in *Furlow* used the words "his lane." Defendant apparently contends that the jury was confused by the use of the term "right." We note that no such contention was raised in paragraph 4 of her motion for new trial. In any case, we fail to see how the term could have confused the jury. The lanes were consistently identified as "right," "center" (or middle), and "left," with "right" being the lane closest to the access ramp. Defendant herself stated she was driving in the "right" lane prior to her move into the center lane. We find no deficiency in the submitted instruction.

■ We next address defendant's contention that the instruction was not supported by sufficient evidence. In determining whether the instruction was supported by evidence we must consider the evidence in the light most favorable to plaintiff and give plaintiff the benefit of all favorable inferences reasonably to be drawn from all the evidence. We must disregard defendant's evidence unless it tends to support the grounds of negligence hypothesized in the instruction. *See, McDaniels v. Hall*, 426 S.W.2d 751, 753 (Mo.App.1968). We believe the evidence, viewed in the light most favorable to the plaintiff, supported the submission of the instruction. Defendant's testimony in her deposition indicated that she did not look in her rearview mirror prior to changing lanes, and she was unsure if she looked out her back window. She said she "remembered" the center lane was clear from observing the traffic to her left at the time she merged into the right lane. Pimpton's testimony indicated that when defendant attempted to change lanes his truck was so close to defendant's car that the rear of the car was not visible to him. Given the size of Pimpton's truck and the proximity of the vehicles, reasonable persons could conclude that defendant failed to "ascertain" that her lane change could be made with safety. The evidence fully supported the facts hypothesized in the verdict director.

Because the instruction was a correct declaration of the pertinent law and was supported by the evidence the trial court erred in granting defendant's motion for new trial. The order granting a new trial is reversed and the cause is remanded with directions to reinstate the verdict of the jury and enter judgment thereon in favor of plaintiff.

SMITH, P.J., and DOWD, J., concur.