Linda M. DOUGLAS, et al., Appellants,

v.

Jeffrey Alan HAWKINS, et al.,
Respondents.

No. WD 42424.

Missouri Court of Appeals,
Western District.

May 29, 1990.

M. Randall Vanet, Kansas City, for appellants.

Daniel E. Hamann, Kansas City, for Jeffrey Alan Hawkins.

James L. Baker, Kansas City, for Nationwide Mut. Ins. Co.

Before MANFORD, P.J., and
KENNEDY and ULRICH, JJ.

KENNEDY, Judge.

This is an appeal by plaintiffs Linda Douglas and her husband Wayne Douglas from a judgment for defendants pursuant to a directed verdict entered by the court at the close of plaintiffs' evidence in their claims for personal injuries and loss of consortium respectively.

Plaintiffs' claims grew out of a collision which occurred on January 30, 1985, on Highway I–29 in Platte County, in which Linda claims she sustained a broken wrist. Wayne was driving and Linda was riding in the front passenger seat of the Douglas automobile. They were driving south, in the middle lane of the three traffic lanes. Visibility was reduced by blowing snow, and the highway surface was covered with packed snow. Ahead of them, an earlier collision had caused traffic to be stopped. All three lanes of the highway were blocked. As Wayne attempted to stop the Douglas car it slid from the center lane to the left, or inside lane and collided with a white van stopped in that lane.

Three to five seconds after the Douglas car came to a stop after its collision with the van, it was struck by the car driven by defendant Hawkins. Hawkins, too, had been driving south on Highway I–29 in the center lane. According to his statement to an investigating officer, "[a] blue Citation came over in front of me, and I hit my brakes and started sliding backwards and hit the side of the silver [the Douglas] car that had hit the white van". In his trial testimony, he said the blue car was ahead of him before the beginning of the concate-

nation of events leading up to the collision, but in the right-hand lane.

[I]t hit its brakes, slowed down and started coming in my lane.... He slowed down and veered to his left, which would be in the center lane.... which made me move to brake and move to my left. I did not lose control at that time.... That's not true. The reason why I started to slide is because of the Douglas car and all the lanes being wrecked, crashed with cars.... I felt good about not getting into an accident when I avoided that car. I felt great; I had gotten in that lane, and I was going just fine.... It wasn't a fast swerve. He was apparently trying to avoid something at the time. I didn't know why he swerved.

Hawkins stated that the blue car was from 40 feet to five car lengths ahead of him. Hawkins went ahead to say his speed was 40 miles per hour until he braked and moved into the left lane to avoid the blue car; then was going 30–35 miles per hour; applied his brakes again after he saw the stopped traffic in front of him; and was going 25–30 miles per hour at the time of the impact with the Douglas car.

The Hawkins car struck the Douglas car at the left rear, and knocked the right side of the Douglas car against the white van, so there were two separate impacts. The Douglases felt two other impacts in quick succession following the Hawkins impacts but they were unable to identify their source. The initial impact with the white van, and the impacts following the Hawkins collision, were less severe than the Hawkins collision.

The plaintiffs brought suit against Hawkins, and, claiming that the collision occurred also as a result of the negligence of the driver of the blue car in swerving in front of the Hawkins car, brought suit against Nationwide Mutual Insurance Company, the Douglases' uninsured motorist coverage carrier.

There was evidence from which the jury could find that Hawkins was driving too fast to stop within the distance of visibility, which made a submissible case of negligence. *Haley v. Edwards*, 276 S.W.2d 153,

158–59 (Mo.1955); *Johnson v. Lee Way Motor Freight, Inc.*, 261 S.W.2d 95, 98 (Mo. 1953); *Robertson v. Grotheer*, 521 S.W.2d 452, 458 (Mo.App.1975). Hawkins does not dispute this point, so there is no need to detail the evidence.

When the Hawkins car struck the Douglas car, Linda maintains she sustained her broken wrist. The fractured wrist was described by plaintiff's witness Dr. Villmer as a Colles' fracture. Both defendants claim that plaintiffs' evidence does not show prima facie that the broken wrist was caused by collision of the Hawkins car with the Douglas car, and that they were entitled to the directed verdict because of this lack of medical causation.

We conclude the evidence is sufficient to show prima facie that the broken wrist was caused by the collision of the Hawkins car with the Douglas car. There is no doubt that Linda did not have a broken wrist before the series of collisions described in the evidence, and that she had one immediately afterwards. The first collision, according to Linda's testimony, did not cause her to be thrown about in the car or to strike any part of the car. The two impacts following the Hawkins collision were less severe than the Hawkins collision; she had been "jolted" by them, but she was unable to say whether she had been thrown against any part of the car.

■ Defendants' claim of absence of proof of medical causation is based upon a contention that a Colles' fracture is caused, according to the testimony of Linda's physician witness, by striking the heel of the hand or the palm of the hand when it is bent backward, or hyperextended, whereas Linda's testimony was that she struck the back of her hand on the right-hand door in the Hawkins collision. Therefore, say the defendants, Linda's fractured wrist could not have resulted from the Hawkins collision. In reviewing a judgment based upon a directed verdict against the plaintiff, we take the evidence and the inferences therefrom in the light most favorable to the plaintiff, disregarding contrary or unfavorable evidence (except admissions by plaintiff), and uphold the directed verdict only if

there is no evidence to support it. *Fly v. Royal Auto Repair,* 747 S.W.2d 237, 238 (Mo.App.1988); *Majors v. Butner,* 702 S.W.2d 539, 543 (Mo.App.1985).

■ Neither Linda's testimony nor Dr. Villmer's was so definite as to exclude Linda's movements inside the car after the Hawkins collision as the cause of her fractured wrist. Linda said she was thrown against the right hand door as a result of the Hawkins collision, but she could not recall the position of her arm at the time. Linda's testimony was: "[M]y shoulder and elbow hit, and my arm flew up in some way.... Most likely some part of the back of my hand or the back of my wrist was striking the door or the window ornament.... [I]t could have been the door handle. I don't know for sure." Dr. Villmer, then, testified that Linda had a "Colles'" fracture, which "involves a fracture, usually complete, of the distal radius and a fracture of the ulnar styloid". He acknowledged that such a fracture "in the textbook example" results when a person falls and tries to catch himself with the palm of his outstretched hand. The bones in the base of the hand are "pushed into" the bones of the radius and the ulnar— "anything that forces the wrist into hyperextension; it forces it backward". A blow on the back of the hand, on the other hand, would result in a reverse Colles' fracture. A blow to the back of the hand would not cause a Colles' fracture "under ordinary circumstances". A Colles' fracture would result from striking the palm "under ordinary circumstances". Dr. Villmer went ahead to qualify his opinion: "There are strange types of fractures that are produced in car accidents now, but in ordinary circumstances, that is true."

The foregoing testimony made a submissible case of medical causation. Plaintiff is involved in an automobile collision, in which her right shoulder and arm come into collision with the interior of the right hand door. She is discovered to have a broken wrist which was not present before. She can hardly be expected to take note of the precise way the wrist was broken, and indeed her testimony does not confine her to

one precise explanation of how it occurred. Furthermore, Dr. Villmer's testimony does not say that a Colles' fracture can occur in no other way than by a blow to the palm or the heel of the hand, but said only that was true "under ordinary circumstances."

Linda's testimony of having sustained a broken wrist in an automobile collision, without any medical testimony, made, as noted above, a prima facie case of a cause-and-effect relationship between collision and injury. *See Ficken v. Hopkins,* 389 S.W.2d 193, 202 (Mo.1965); *Gant v. Scott,* 419 S.W.2d 262, 265 (Mo.App.1967); *Quadlander v. Kansas City Public Service Co.,* 240 Mo.App. 1134, 224 S.W.2d 396, 403 (1949); *Bell v. S.S. Kresge Co.,* 129 S.W.2d 932, 935 (Mo.App.1939). We do not take Dr. Villmer's testimony to be in necessary contradiction thereto. But if it were so taken, plaintiff would not be bound by the physician's testimony. "Furthermore, a party is not conclusively bound by the adverse testimony of his witness, and he may rely upon the more favorable testimony of other witnesses unless such other testimony is inconsistent with his theory of the case or contrary to the established physical facts." *Burris v. Kansas City Public Service Co.,* 226 S.W.2d 743, 749 (Mo.App. 1950).

The trial court was in error in directing a verdict in Hawkins's favor, and the judgment against plaintiffs Linda and Wayne Douglas in favor of defendant Hawkins is reversed.

■ If there is any evidence of negligence on the part of the driver of the blue car, represented in this case by Nationwide Mutual Insurance Company under the Douglas uninsured motorist coverage, there is at least no evidence that such negligence contributed to cause the collision in which Linda was injured. Hawkins's testimony is quite clear that his driving into the left lane to avoid the blue car which had cut into the center lane ahead of him had been accomplished with safety and without incident. Only after that maneuver, as he was proceeding south in the left hand, or inside lane, did he see the cars

blocking the roadway in front of him and apply his brakes to attempt to stop his car.

The Douglases pin their claim of a submissible case against the blue car upon Hawkins's statement to the investigating officer that "a blue Citation came over in front of me, and I hit my brakes and started sliding backwards and hit the side of the silver [the Douglas] car that had hit the white van". We will assume without deciding that the statement was admissible in evidence. Hawkins's statement that the blue car "came over in front of me", without more, does not make a submissible case of negligence against the driver of the blue car. *See Bell v. United Parcel Services,* 724 S.W.2d 682, 685–686 (Mo.App.1987).

The judgment in favor of Nationwide Mutual Insurance Company is affirmed.

The case is remanded for a new trial on the Douglas claims against Jeffrey Alan Hawkins.

All concur.