**Carles PIKEY and Patricia Pikey,**
**Plaintiffs/Appellants,**

v.

**GENERAL ACCIDENT INSURANCE**
**COMPANY OF AMERICA,**
**Defendant/Respondent.**

No. 67577.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 26, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 30, 1996.

Application to Transfer Denied
June 25, 1996.

Toni Griesbach, John J. Frank Partnership, St. Louis, for appellant.

Eugene K. Buckley, Evans & Dixon, St. Louis, for respondent.

CRANE, Chief Judge.

Husband was injured when his automobile hit a concrete median. He and his wife filed an action against his uninsured motorist carrier which had denied coverage because he had not promptly notified police of the involvement of a phantom vehicle. The jury awarded plaintiff $750,000.00 in damages and plaintiff's wife $205,000.00 for loss of consortium. These verdicts were reduced by the amounts of previous settlements. The trial court entered judgment notwithstanding the verdict for defendant insurer.

On appeal plaintiffs contend that they were excused from their failure to provide timely notice to the police by husband's incapacity. Alternatively, they claim that they substantially complied with the notice requirement by notifying their carrier. Defendant contends that it was entitled to judgment notwithstanding the verdict because plaintiffs failed to make a submissible case on either compliance with the policy or on the uninsured motorist's negligence. We find plaintiffs made a submissible case on both issues and reverse and remand with instructions.

We view the evidence in the light most favorable to plaintiffs. On April 16, 1990 at 5:15 a.m. plaintiff Carles Pikey (individually referred to herein as Mr. Pikey) was driving his red pickup truck eastbound at approxi-

mately twenty-five miles per hour in the left lane of an entrance ramp to Highway 40 in St. Louis County in a dense fog when a white truck travelling at forty-five to fifty miles per hour came along side him in the right entrance lane, crossed in front of him, and forced him to spin sideways onto the highway and crash into the concrete median in the center of the highway. The white truck, which made no physical contact with Mr. Pikey's vehicle, continued eastbound on Highway 40. After his truck came to rest, it was struck by two successive automobiles traveling east on Highway 40.

The accident was reported at 5:20 a.m. and the Missouri Highway Patrol was on the scene by 5:24 a.m. The Missouri Highway Patrol made three accident reports.

Mr. Pikey was taken by ambulance to St. John's Hospital where he underwent surgery for a blood clot on the right side of the brain. He also had broken ribs, a fractured left elbow, an irregular heart beat, irregular blood pressure, complications with his lungs, and brain swelling. He was unable to communicate for nearly two weeks following the accident.

Mr. Pikey's wife, Patricia Pikey (individually referred to herein as Mrs. Pikey), who was not involved in the accident, notified their insurance agent of the collision on the day it occurred, but she did not know about the phantom truck at that time. The agent notified the carrier, defendant General Accident Insurance Company. Defendant assigned one of its adjustors, Mariann Arcelona, to investigate. Arcelona made the following entry in her activity log regarding her first contact with Mrs. Pikey:

Called insured Mrs. at home. No answer. Called agent. Advised of same. I decided to call insured at St. John's intensive care waiting room. Spoke with Mrs.

Apparently it was heavy fog out yesterday and insured hit the concrete median and then a little bit later, unknown how long, a vehicle came along and hit insured, then another car hit insured, then another hit insured.

The first car that hit insured was the one who told insured's son what happened. He said the insured was sitting up against median when he came along and hit insured. Not until after they all got out of the cars did he realize that someone was in our car. He thought he hit an abandoned car.

Unknown at this time if we had lights on etc. No names of claimants or witnesses. Insured had to be cut out of vehicle and taken to St. John's where he had surgery for blood clot on the right side of the brain. He also has broken ribs, fractured left elbow, irregular heart beat and blood pressure. They have called in a lung specialist as well as specialist regarding the swelling of his brain.

The next entry in Arcelona's activity log provided:

I met with Mrs. Insured last evening. Obtained photos of vehicle. Appears accident may have happened a little differently. Somehow insured was broad side in road with rearend facing median, not up against median, possibly like he applied brakes to stop fast for traffic. Anyway somehow he was broadside in road. Audi came along and hit insured in passenger door spinning him around and then two other cars hit insured.

Arcelona did not investigate the matter further nor did she contact the Missouri Highway Patrol to request further investigation. Arcelona told Mrs. Pikey to contact defendant as soon as Mr. Pikey awoke so that he could tell her "what happened in the accident...." She told Mrs. Pikey that she "would take care of everything." She told Mrs. Pikey that she would be handling the claim, that she would take good care of them, and that Mrs. Pikey did not have to worry about anything but her husband.

On May 1, approximately two weeks after the accident, the intubation tubes were removed from Mr. Pikey's throat. Mr. Pikey told his wife that he had been run off the road by a white truck. Mrs. Pikey went with

her daughter to the telephone in the hospital lobby and reported this information to defendant as Arcelona had instructed. Mrs. Pikey spoke to someone other than Arcelona because Arcelona was out of the office.

Mrs. Pikey made a second call to defendant on May 10, 1990, approximately three weeks after the accident, and spoke with Arcelona, reporting to her the information about the phantom vehicle. Defendant did not report the information to the Missouri Highway Patrol or ask the highway patrol to investigate the existence of a phantom truck.

Plaintiffs engaged an attorney who contacted Arcelona and notified her on several occasions about the existence of the white truck. The attorney offered to share his investigation with her. Defendant did not respond. Around June 21, 1990, Arcelona took a leave of absence from defendant due to complications from her pregnancy and did not return.

Around October 2, 1990 plaintiffs' attorney called and sent defendant a letter reiterating his request that defendant investigate the matter of the phantom vehicle. Again, he offered to share his complete file with defendant. On November 16, 1990 he sent a similar letter. In his November letter he indicated that he had two very large file folders of information, reports, and photos already collected and that the case was very complex. In November, 1990 plaintiffs and their attorney met with one of defendant's representatives. They told the representative about the white truck.

Plaintiffs formally notified defendant by letter on October 4, 1990 of the potential for an uninsured motorist claim in the event the liability companies of the other two drivers involved in the accident did not assume full responsibility for Mr. Pikey's injuries. Defendant denied coverage. Thereafter, plaintiffs filed this action for coverage, for loss of consortium, for tortious bad faith and vexatious refusal to pay. In its answer defendant responded that it denied coverage because Mr. Pikey did not comply with the terms of his policy in that he failed to notify the Missouri Highway Patrol that a phantom or hit-and-run vehicle was responsible for the collision. As a result, defendant claimed, it was prejudiced.

The policy, Part E—Duties after an Accident or Loss, provided that defendant has "no duty to provide coverage under this policy unless there has been full compliance with the following duties...." These duties include: "[A] person seeking Uninsured Motorist Coverage must also [p]romptly notify police if a hit-and-run driver is involved."

The jury returned a verdict in plaintiffs' favor on October 27, 1994, awarding $750,000 in compensatory damages to Mr. Pikey and $205,000 to Mrs. Pikey for loss of consortium. By memorandum dated December 20, 1994 the parties stipulated that plaintiffs received two previous settlements from the motorists who collided with Mr. Pikey's disabled vehicle which reduced the verdict in favor of Mr. Pikey to $545,900.00 and the verdict in favor of Mrs. Pikey to $149,000.00.

Defendant filed a Motion for Judgment Notwithstanding the Verdict. The trial court sustained the motion on the ground that plaintiffs' failure to notify the Missouri Highway Patrol was a material breach of the policy which prejudiced defendant.

■ A contention that a judgment notwithstanding the verdict was improperly entered raises the issue of whether the plaintiff made a submissible case. *Venitz v. Creative Management, Inc.*, 854 S.W.2d 20, 21 (Mo. App.1993). On review of a trial court's grant of judgment notwithstanding the verdict, we consider only the evidence supporting the verdict, and inferences reasonably drawn therefrom. *Poluski v. Richardson Transp.*, 877 S.W.2d 709, 711 (Mo.App.1994). We affirm only if there is no room for reasonable minds to differ on the issues and if the trial court's action is supported by at least one of the grounds raised. *Id.*

In their first point plaintiffs contend that the trial court erred in granting the JNOV because Mr. Pikey's incapacity prevented him from providing timely notice. In their

second point plaintiffs contend they substantially complied with the policy by notifying defendant within a reasonable time. Plaintiffs further assert that their failure to notify the highway patrol did not prejudice defendant.

■ An insured's failure to provide timely notice as required by an insurance policy may be excused in two situations: (1) where the insured is unable to comply with the literal notice terms due to physical incapacity or an inability to discover the existence of the policy and its terms and (2) where the insured has substantially complied with the timely notice provision. *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 10 (Mo. banc 1995). The excuse of incapacity and the excuse of substantial performance require separate analysis. *Id.*

■ If the insured is unable to comply with the notice provision due to physical incapacity or inability to learn of the existence of the policy, the incapacity or inability will excuse compliance with a policy's notice provisions if notice is given within a reasonable time after recovery from the incapacity. *Id.* at 12, 15. A pertinent factor in determining whether the notice was given within a reasonable time is whether the insurer was prejudiced by the delay. *Id.* at 15. The insurer bears the burden of showing such prejudice, which is not presumed and is an issue of fact. *Id.* at 15. If the insurer proves prejudice, that factor must be considered in determining whether the insured provided notice within a reasonable time after his disability ended. *Id.* at 15.

■ Alternatively, if the insured substantially complies with a policy's notice provisions, the insured's failure to comply with an immaterial requirement will not justify an insurer's avoidance of liability. *Id.* at 15. Substantial compliance is determined by whether the failure to fully comply prejudiced the insurer, a fact question on which the insurer has the burden of proof. *Id.* at 15–16. If the insurer proves prejudice, it is entitled to judgment in its favor. *Id.* at 16.

*Tresner* makes clear that these principles apply equally where a hit-and-run or phantom vehicle is involved and holds that prejudice is not presumed from a failure to comply in every literal respect with the phantom vehicle and hit-and-run policy provisions. *Id.* at 15.

■ Plaintiffs made a submissible case on compliance with policy conditions. Plaintiffs' situation raises issues of both incapacity and substantial compliance. Mr. Pikey was incapacitated by the accident for two weeks. The day he was first able to speak he told his wife about the phantom vehicle and she immediately notified defendant. Since there was no delay in giving notice at the end of his incapacity, there is no issue of a "reasonable delay." The issue is whether the notice to defendant substantially complied with the requirement to notify the police.

Although plaintiffs never gave notice to the highway patrol, Mrs. Pikey notified defendant immediately. In spite of this notice and subsequent notices, defendant never contacted the highway patrol to report a phantom vehicle. Further, defendant, who had previously advised Mrs. Pikey that defendant would "take care of everything," did not advise plaintiffs to contact the highway patrol. The highway patrolman who investigated the case testified that if Mrs. Pikey had reported the phantom vehicle to him two weeks after the accident he would have spoken to Mr. Pikey "and looked back at the accident and the evidence I found at the scene to see if I could determine that maybe a truck was there." He would have filed a supplemental report containing the plaintiffs' statements and his conclusions. He testified that the only other thing he could have done would have been to go out to the scene at the same time as the accident for several mornings to see if a white truck passed by and question the driver. He admitted that he had located a phantom driver only once in his career.

Reasonable minds could differ on whether this evidence established prejudice. Prejudice was a question of fact for the jury and was not, as defendant argues, a matter of

law. Because plaintiffs made a submissible case on compliance with their policy, the trial court erred in granting defendant a judgment not withstanding the verdict on this ground.

Defendant argues that it was entitled to judgment notwithstanding the verdict for the additional reason that plaintiffs failed to make a submissible case on the uninsured motorist's negligence. That negligence was submitted on the theory that the uninsured motorist changed lanes when it was not safe to do so. Defendant raised this as one of its grounds in its motion. If the trial court's action in sustaining the motion for judgment notwithstanding the verdict is supported by any of the grounds raised by defendant in its motion and carried forward in its brief and would support a judgment in defendant's favor, the trial court's judgment will be affirmed. *Stix Friedman & Co. v. Fidelity & Deposit Co.*, 563 S.W.2d 517, 521 (Mo.App. 1978).

Plaintiffs' verdict director submitted that the uninsured motorist moved his vehicle from his lane of traffic when it was not safe to do so and was thereby negligent. Defendant contends that there was no evidence of the relative positions of the vehicles at the time the uninsured motorist cut in front of Pikey and that such evidence was necessary to make a submissible case.

In support of its contention that plaintiffs failed to make a submissible case, defendant cites *Douglas v. Hawkins*, 790 S.W.2d 485, 488 (Mo.App.1990) and *Bell v. United Parcel Services*, 724 S.W.2d 682, 685–86 (Mo.App. 1987). *Bell* involved a claim of a "mystery car's" failure to keep a lookout. The only evidence relating to the mystery car was a co-defendant's out-of-court statement that the mystery car entered the highway in an erratic manner, that it was in the lane to the right of the co-defendant's truck and that the co-defendant turned his truck in order to get into the mystery car's line of vision. At that time, his truck started to slide on ice. *Bell,*

724 S.W.2d at 684. We held that in the absence of any evidence of visibility, speeds or distances there was no submissible case to support a finding of failure to keep a lookout or that such failure caused or contributed to cause the co-defendant to lose control of his vehicle. *Id.* at 685. In *Douglas* the court held that a driver's out-of-court statement that "a blue [car] came over in front of me, and I hit my brakes and started sliding ..." (which contradicted his trial testimony) without more, did not make a submissible case of negligence against the driver of the blue car.

In contrast to *Bell* and *Douglas,* in this case there was sufficient evidence to make a submissible case of negligence against the driver of the white truck. The accident occurred at approximately 5:15 a.m. while it was still dark. There was a dense fog and the streets were damp. Mr. Pikey was traveling twenty-five miles per hour in his red pickup truck with his headlights illuminated because of the fog. He was taking his usual route to work. He testified that as he was about to enter eastbound Highway 40 from the left lane of a two lane entrance ramp, he saw, in his rear-view and right side-view mirrors, bouncing lights coming up behind him in the right lane of the entrance ramp. He testified that when it was even with him in the lane to his right, he saw a white pickup truck traveling forty-five to fifty miles per hour. At this time Mr. Pikey's vehicle had reached Highway 40 and was starting to straighten up.[1] He said the white pickup truck came up even with him for a "split second" and cut him off. The white pickup truck did not activate its turn signal. He said the truck came "pretty damn close." He placed the location of the cutoff on the photographic exhibit at the point where the ramp and Highway 40 join. Mr. Pikey said he hit his brakes and cut his steering wheel to the left to miss the truck, and the truck "scooted around" him. Mr. Pikey's car hit the concrete median in the center of the highway, three lanes to the left of the lane in which he was traveling. Defendant's adjuster, Arcelo-

---

1. Photographic exhibits show that the two lanes of this entrance ramp join Highway 40 at an angle and then run parallel to it for a short distance as fourth and fifth lanes.

na, reported, "Somehow insured was broad side in the road with rearend facing median, not up against median, possibly like he applied brakes to stop fast for traffic." The first driver who later subsequently ran into the plaintiff's vehicle testified that it was stopped perpendicular to the traffic lanes across the left and center lanes. Both he and the second driver to strike Mr. Pikey's vehicle testified they also were proceeding at approximately thirty to thirty-five miles per hour because of the dense fog.

This case was submitted on a theory that the driver of the white truck moved his vehicle from his lane of traffic when it was not safe to do so. A motorist must exercise the highest degree of care to ascertain that it is safe to move from one lane to another and may change lanes only when the lane change can be made with safety. *Furlow v. Laclede Cab Co.*, 502 S.W.2d 373, 380–81 (Mo.App. 1973). In *Furlow* we held that there was sufficient evidence to support a finding that defendant's driver did not ascertain that a change of lane could be made with safety if the finder of fact believed plaintiff's evidence that the driver swerved in front of the taxi in which plaintiff was a passenger with only four feet in front of the taxi. In *Mo. Highway & Transp. Comm'n v. Mauer*, 728 S.W.2d 722 (Mo.App.1987), a truck driver testified that when defendant attempted to change lanes, the driver's truck was so close to defendant's car that the driver could not see the rear of defendant's car. We held that given the size of the truck and the proximity of the vehicles, reasonable persons could conclude that defendant failed to ascertain that her lane change could be made with safety. *Id.* at 725.

Mr. Pikey testified the driver of the white truck swerved in front of him immediately after that driver came up even with him. He testified that both events happened in the same location. He testified that in cutting him off, the driver had to "scoot" around him. This evidence of proximity as well as the evidence of the manner of the driver's approach and weather conditions would support a finding that the driver of the white truck did not ascertain that a change of lane could be made with safety. Reasonable minds could differ on whether the driver of the white truck took the necessary actions to ascertain that it was safe to move from one lane to another and whether he had changed lanes when it was not safe to do so. Plaintiffs made a submissible case on the negligence of the uninsured motorist.

We reverse and remand this case to the trial court with instructions that the trial court's grant of respondents' motion for judgment notwithstanding the verdict be set aside and the jury verdict in plaintiffs' favor as reduced by the December 20, 1994 memorandum be reinstated.

SIMON, J., and CHARLES B. BLACKMAR, Senior Judge, concur.