James HALL, Plaintiff/Appellant,

v.

NATIONSBANK,
Defendant/Respondent.

No. ED 76429.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 27, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 2000.

Application for Transfer Denied Oct. 3, 2000.

Holtkamp, Liese, Beckemeier & Childress, James P. Lemonds, Bryce M. Boswell, St. Louis, for appellant.

Brown & James, Joseph R. Swift, Bridget Monroig Nave, St. Louis, for respondent.

MARY K. HOFF, Judge.

James Hall (Hall) appeals from the judgment of the trial court in a tort action against NationsBank, granting NationsBank's Motion for Judgment Notwithstanding the Verdict. We affirm.

Hall planned to construct a home in Poplar Bluff, Missouri. In 1994, Hall entered into a construction loan and borrowed $135,000 from Boatmen's Bank (or Bank), which later merged with and became NationsBank. Jay Knudtson (Knudtson), an assistant vice-president in the residential loan department at Boatmen's Bank, assisted Hall. When Hall needed money from the Bank for labor and materials, he would prepare a draw request for the Bank. The purpose was to ensure that the Bank's dollars were spent on the house.

Ernie Hood (Hood), the owner of a chain, "Hoodco," has stores in Poplar Bluff called "Hoods." Hood filed a complaint with the Poplar Bluff Police Department because Hood believed Hall was taking goods from his store without paying for them. Hood believed manager, Scott Bosoluke (Bosoluke), was trading out materials with customers. Bosoluke is an acquaintance of Hall, and on occasion told Hoods' cashier to write out charge tickets for Hall, which was not the policy of Hoods.

Hood visited Knudtson to discuss Hall's banking business after realizing Hall used checks drawn on Boatmen's Bank at his store. Hood told Knudtson he wanted evidence to indict Hall, and wanted to know everything he could about Hall's relationship with the Bank. Knudtson showed Hood a "Hoods" invoice that Hall submitted with one of his draw requests. The invoice Hall submitted was phony. Knudtson admitted he did not have Hall's permission to show any of Hall's file to Hood.

In May, 1995, Hood visited Al Spradling (Spradling), an attorney at Boatmen's Bank, to inquire whether the Bank would get involved in a lawsuit against Hall. Spradling told Hood the Bank would respond to a subpoena for Hall's records. Spradling gave Knudtson a memo regarding the meeting with Hood.

Hoodco filed a civil action against Bosoluke, and sent a notice of deposition to Knudtson, which advised a subpoena would be issued for Hall's construction loan file. Danny Moore (Moore) represented Bosoluke. Knudtson called Spradling during the deposition, and chose to produce the file even though he had not yet been served with a subpoena. Moore objected to the production of Hall's file.

Hoodco also brought suit against Hall for unjust enrichment and stealing. Hoodco subpoenaed Knudtson to appear for deposition and produce Hall's file. A few months later, Hoodco voluntarily dismissed its suit against Hall. Hall had retained Moore to represent him in that lawsuit, and paid Moore $3,000 in legal fees for Moore's services.

Hall then sued NationsBank for breach of a confidential banking relationship by disclosing information from Hall's bank file to Hood. The case was submitted to a jury on a tort count for violating the confidential banking relationship between Hall and NationsBank. The jury returned a verdict in favor of Hall in the amount of $3,000 actual damages, and $300,000 punitive damages. NationsBank filed a Motion for Judgment Notwithstanding the Verdict (Motion). The court granted the Motion and entered an Order and Amended Judgment in favor of NationsBank. This appeal followed.

In his first point, Hall argues the trial court erred in granting NationsBank's Motion because he presented sufficient evidence to permit a jury to find a confidential relationship existed between Hall and NationsBank, and to support a finding NationsBank breached its obligations flowing from that confidential relationship.

A contention that a judgment was improperly entered raises the issue of whether the plaintiff made a submissible case. *Pikey v. General Acc. Ins. Co. of America*, 922 S.W.2d 777, 780 (Mo.App. E.D.1996). On review of a trial court's grant of judgment notwithstanding the verdict, we consider only the evidence supporting the verdict, and inferences reasonably drawn therefrom. *Id.*

Hall admits the relationship between a borrower and a lender is that of a debtor and creditor, rather than a fiduciary relationship. *Centerre Bank of Kansas City, N.A. v. Distributors, Inc.*, 705 S.W.2d 42, 53 (Mo.App. W.D.1985). However, Hall argues exceptions exist in special circumstances, which apply in this case. Specifically, Hall relies on *Pigg v. Robertson*, 549 S.W.2d 597 (Mo.App. W.D.1977).

In *Pigg*, plaintiff brought an action for breach of a confidential and fiduciary relationship against defendant bank. *Pigg*, 549 S.W.2d at 598. Plaintiff went to a bank and spoke with Mr. Robertson regarding a loan to buy a particular farm. *Id.* Robertson was an outside auditor, and not an employee of the bank, although plaintiff thought Robertson was an employee. *Id.* at 599. A few days later Robertson purchased the farm. *Id.*

The Western District found the bank liable even though Robertson was not its employee because Robertson was aware that he was being called upon to provide advice for the bank's customers and a jury would have been entitled to find that a bank customer approaching Robertson had a right to expect that disclosures to him would be given the same protection they would have received had they been made to a bank employee. *Id.* at 601. Additionally, an employee of the bank directed plaintiff to Robertson. *Id.* The court found plaintiff's evidence was sufficient to permit a jury to find a confidential relation did exist between plaintiff and Robertson. *Id.*

The court cited *Peterson v. Idaho First National Bank*, 83 Idaho 578, 367 P.2d 284 (1961), and said:

When a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction including the bank's motive, if material, for participating in the transaction unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him.

*Pigg*, 549 S.W.2d at 600. Hall contends his case is similar to *Pigg* because NationsBank placed itself in a position of trust and confidence, and assumed and accepted the duty not to divulge or personally profit from the information received by Hall.

NationsBank argues Hall failed to establish a fiduciary relationship between the parties out of which a duty not to disclose confidential information might arise. NationsBank cites *UT Communications Credit Corp. v. Resort Development, Inc.*, 861 S.W.2d 699 (Mo.App. E.D.1993), which held as a matter of law, absent other evidence of a fiduciary relationship, there is no such relationship between a bank as lender and its customer as borrower. *Id.* at 711.

This case is distinguishable from *Pigg* because NationsBank did not use Hall's information to its advantage. In *Pigg*, the Western District found a confidential relationship existed between Pigg and the bank because of the unique circumstance that Robertson knew the farm described by Pigg was the same farm Robertson purchased. Robertson used Pigg's

information to his advantage. Here, NationsBank did not use Hall's information to its advantage. Hall and NationsBank had the relationship of a lender and borrower only, and did not have a fiduciary relationship.

We agree with the trial court's statement:

> while the Court has a strong sympathy for the proposition that the law ought to recognize such a claim, it is of the view that it is the General Assembly, the body vested by the Constitution of Missouri with the legislative power of the state, that should decide whether the law should recognize such a claim, what its scope should be, and what limitations it should be subject to.

Additionally, Hall did not incur actual damages as a result of the alleged breach. The only evidence of actual damages is the $3,000 bill for the attorney's fees. Hoodco could have sued Hall for stealing from Hoods whether or not Hood saw the phony invoice, and Hall would be liable for his own attorney's fees. Therefore, we find actual damages are not properly supported as a result of the alleged breach of duty. Point one denied.

In light of our disposition of point one, we do not need to address point two regarding punitive damages, or point three regarding a juror's nondisclosure. Points two and three denied.

Judgment affirmed.

WILLIAM H. CRANDALL, Jr., P.J. and ROBERT E. CRIST, S.J.: Concur.